ELIZABETH DAVIS vs. GEORGE CALVERT, CAROLINE CALVERT, et al.—June, 1833.

The third section of the first sub-ch. of the act of 1798, ch. 101, provides, "that no will, testament or codicil, shall be good and effectual for any purpose whatsoever, unless the person making the same, be at the time of executing or acknowledging it, of sound disposing mind, and capable of executing a valid deed or contract." These latter words are of importance in the investigation touching the mental capacity of a testator. He who is not competent to execute a valid deed or contract, is under the testamentary system of the State, incompetent to make a valid will or testament.

The testator's capacity is to be determined by the condition of his mind, at the time of his executing the will or testament; and for the purpose of shedding light upon that, evidence of its condition, and of his bodily imbecility, both before and after the period of his executing or acknowledging his will may be produced. It is not of itself sufficient to avoid a will or testament that its dispositions are imprudent, and not to be accounted for. But a will or testament may by its provisions furnish intrinsic evidence involving it in suspicion, and *tending* to show the incapacity of the testator to make a disposition of his estate with judgment and understanding, in reference to the amount and situation of his property, and the relative claims of the different persons who should have been the objects of his bounty.

The contents of a will or testament; the manner in which it was written and executed; the nature and extent of the estate of the testator; his family and connexions; their condition and relative situation to him; the terms upon which he stood with them; the claims of particular individuals; the condition and relative situation of the legatees or devisees named; the situation of the testator himself; the circumstances under which the will was made; are all proper to be shown to the jury, and often afford important evidence in the decision of the question of a testator's capacity to make a will.

A will may be avoided also for fraud, importunity, and undue influence.

Importunity and undue influence may be fraudulently exerted, but they are not inseparably connected with fraud; nor is it every degree of importunity that is sufficient to invalidate a will or testament. Honest and moderate intercession, or persuasion, or flattery unaccompanied by fraud or deceit, and where the testator has not been threatened or put in fear by the flatterer, or persuader, or his power, or dominion over him, will not have that effect; but there may be great and overruling importunity and undue influence without fraud, which, when established, may and ought to have the effect (under circumstances) to avoid a will.

That degree of importunity or undue influence which deprives a testator of his free agency, which is such as he is too weak to resist, and will render

Davis *vs.* Calvert, *et al.*—1833.

the instrument not his free and unconstrained act, is sufficient to invalidate a will; and this, not only in relation to the person alone by whom it is so procured, but as to all others who are so intended to be benefitted by his undue influence.

Fraud vitiates every thing with which it is connected. A will obtained by fraud is void.

Fraud is never to be presumed, yet it is not necessary to prove it by positive and direct testimony.

In a question of fraud, any fact, no matter how slight, bearing at all upon the point at issue, and not wholly irrelevant, may be admitted as evidence; but the circumstances when combined and considered by the jury, should be so strong as to satisfy them of the existence of the fact they are offered to establish.

It is a well settled rule of evidence, that remote and collateral facts and circumstances not pertinent or relevant to the issue to be tried, are inadmissible in evidence; but it is equally well settled, that facts and circumstances tending to prove the issue are admissible.

It is sometimes difficult to ascertain whether a particular fact offered in evidence is connected with the issue, and will or will not become material in the progress of the investigation; in such cases, the court not *clearly* seeing that it is wholly irrelevant to the issue, it is proper and usual in practice to admit the proof, on the assurance of the counsel who tenders it, that it will turn out to be pertinent and material.

Declarations adverse to a will, and bearing upon or tending to prove certain issues framed by the Orphans Court upon a *caveat* to a will, made by the executor of the will, who was also defendant on the record, and a contingent devisee representing every interest under the will, are competent evidence to go to the jury.

Upon an inquiry whether a will was obtained by fraud or undue influence, the condition, character, and conduct of the persons drawn around the testator, are of importance to be inquired into in reference to his family and relations, the extent and nature of his estate, the character of the dispositions of the will, and the persons to whom the property is given.

The statement by counsel of what they expect to prove in opposition to the statement on the other side, is not sufficient to lay a foundation for letting in testimony otherwise inadmissible.

If any part or clause of a will was first suggested to a testator by any other person, and adopted by such testator, such adoption ought not to be the result of his incapacity or weakness of mind, nor of fraud, circumvention or undue influence, and whether it is so, is for the jury from all the facts and circumstances to decide.

To invalidate a will on the ground of fraud, or undue influence, it is necessary that it should have been induced by fraud, circumvention, deception, imposition, or undue influence, operating upon and controlling the testator at the time it was executed, of which, and in what degree he was so influ-

enced and controlled, is for the jury to decide; and it is not necessary, that such fraud or undue influence should have been immediately and directly exerted, at the particular time at which the will was made, nor is it material by whom practiced.

In the trial of issues framed by the Orphans Court upon a *caveat* to a will, the evidence is not necessarily confined to the facts expressly put in issue, but any fact which tends to prove the fact in issue, may be given to the jury. So where the nature of the case makes an inquiry into the true paternity of children, described in the will as the children of the testator, necessary, as where the fraud is alleged to consist in inducing the testator to believe that such children were his own, when they were not, and so directing his bounty to them, that fact, as a part of the machinery of the fraud may be examined into; and upon the same principle the capacity of devisees named in a will to take the property devised, and the character and consequences of devises over in case of the incapacity of the devisees first named to take, as where they are slaves, may become material for the consideration of the jury.

APPEAL from *Montgomery* County Court.

On the 25th of January, 1831, *a Caveat* was filed in the Orphans Court of *Montgomery* county, by the appellant, as the next kin of a certain *Thomas Cramphin,* then lately deceased, against the admission to *probate,* of a certain paper writing, executed on the 30th June, 1824, purporting to be the last will and testament of said *Cramphin,* and two codicils thereto, dated respectively on the 1st of November, 1824, and the 14th of October, 1825, which had been exhibited by the appellee, *George Calvert,* for probate in said court, and of which the said *Calvert* was named the executor. The other appellees are the devisees and legatees under the will. After the appellee *Calvert,* had answered the petition filed at the time of entering the *caveat,* the Orphans Court upon the prayer of the appellant, directed the following issues to *Montgomery* County Court.

1st. "Whether the said *Thomas Cramphin* at the several times of signing the said paper or instrument of writing purporting to be the last will and testament of said *Cramphin,* with the several additions purporting to be codicils thereto, was of sound and disposing mind."

2d. "Whether at the several times, mentioned in the preceeding issue, was the said *Thomas Cramphin* urged

thereto by the importunities of the defendants, or either of them, which he was too weak to resist, and under circumstances which left him not free to act in the disposition of his estate."

3d. "Whether the said several signatures of said *Cramphin*, to said papers, puporting as aforesaid, were his own free and voluntary acts, to which he was induced with a knowledge of the contents of the same, and without the exercise of an undue influence by the said defendants, or either of them, which in his then situation, and then imbecility of mind, prevented him from making a disposition of his property according to his own free will."

4th. "Whether the execution of said papers by the said *Cramphin*, was procured by fraud and by misrepresentation, by the defendants, or either of them, or by others acting with the privity, and by the direction of them, or any of them."

5th. "Whether the said *Thomas Cramphin*, in the situation in which he was placed, and the circumstances connected with the execution of said papers, purporting as aforesaid, at the several times when the same were executed by him, was capable of knowing the contents of said papers, the manner in which they disposed of his estate, and of withholding his assent to the same."

6th. "Whether the said papers purporting as aforesaid, be void by reason of undue influence, fraudulent devices, importunities, impositions, misrepresentations, and deceits practiced by said defendants, or their procurement, upon said *Cramphin*, to induce him to execute said papers.

7th. "Whether said *Thomas Cramphin*, at any time subsequent to the execution of said papers, purporting as aforesaid, was desirous of altering the same, and whether ne was prevented therefrom by the management, fraud, undue influence, or importunities of said defendants, or any of them, or others by their procurement."

1. At the trial, the plaintiff gave evidence to the jury of the various facts and circumstances relied on to prove the

said issues on their part, and among other things, to prove that the said defendant, *Caroline Calvert*, being a slave belonging to the other defendant, *George Calvert*, the trustee, *devisee*, and executor named in said will, and his reputed illegitimate daughter by a woman slave, did sometime on or about the seventy-fifth year of the age of the said *Thomas Cramphin*, form an illicit connexion and intercourse with said *Cramphin*, and live with him as his mistress, from that time till his death, which happened in the ninety-second year of his age, sometime in the month of December 1830. That during that time she was delivered of eleven children, eight of whom were born, and one of whom died, before the execution of said supposed will, leaving the seven named in the said will then alive, the remaining three of the eleven having been born afterwards, and being yet alive. That the said *Caroline*, was emancipated by the said *George Calvert*, two days before the execution of said will, by a deed of emancipation duly executed, acknowledged, and recorded, including the emancipation at certain specified ages of her said seven children, as appears by the deed which he read to the jury. He also proved, that at the time of the execution of said deed, the said *George Calvert* executed a bill of sale, accompanied by a delivery of the said seven children, to said *Caroline*, which bill of sale he likewise read to the jury.

And among other facts and circumstances given in evidence by the plaintiff, and relied upon to prove the want of a sound and disposing mind, and memory, in said *Cramphin*, and the frauds, circumvention, deception, imposition, and undue influence practiced on the said *Cramphin* by the said *Caroline*, in obtaining the said will and codicil, she tendered, and offered to prove to the court and jury by competent and credible witnesses this further fact, to be taken in connexion with other facts and circumstances, to wit: that the said *George Calvert*, in conversation a few days after the death of said *Cramphin*, declared, that though he had promised the said *Cramphin* to provide for said

children, yet he did not consider himself bound to do so, be-cause he was convinced they were not the children of said *Cramphin.* To the admissibility of which evidence the defendants objected, and the court (KILGOUR, and WILKIN-SON, A. J.) sustained the objection, and rejected the evi-dence offered as last aforesaid.

And the plaintiff further to maintain the issues on her part, offered to prove by competent and credible witnesses, that the said *Caroline Calvert,* before and until the time she formed such illicit intercourse with said *Cramphin,* and became his mistress, led a lewd and dissolute life, and was a common prostitute. To the admissibility of which last evidence the defendants objected, and the court sus-tained the objection, and rejected the same.

The plaintiff then further offered to prove by competent witnesses, that the said *Caroline,* during the time she so lived with said *Cramphin* as his mistress, and whilst he was in-duced by her to confide in her fidelity to him, indulged her-self in secret intrigues and lewd intercourse, unknown to said *Cramphin,* with other men besides said *Cramphin.* To the admissibility of this evidence also, the defendants ob-jected, and the court sustained the objection.

The plaintiff further offered to prove by competent witnes-ses, that the said children mentioned in said supposed will, were falsely, artfully, and deceitfully, and by the undue and overweening influence, and dominion of said *Caroline* over the mind of said *Cramphin,* imposed on him as his chil-dren, when in fact they were not his, but the spurious fruits, and issue of her secret and lewd amours with other per-sons. The defendants objected likewise, to the admissibility of this last evidence, and the court sustained the objection.

The plaintiff then further to maintain the issue on her part, offered to prove by competent witnesses, that said *Cramphin,* by reason of old age, debility, and infirmi-ty, was physically incapable of begetting the said children; but the defendants objected to the admissibility of the evi-dence, and the court sustained the objection.

The plaintiff further offered to prove, that the said defendant, *George Calvert,* was well convinced, and did verily believe, and had good reason to be convinced, and believed, that the said children were not the issue of the body of said *Cramphin,* and that he did nevertheless, aid and abet the false and deceitful imposition of them on said *Cramphin* as aforesaid; to the admissibility of which evidence the defendants objected, and the court sustained the objection, and rejected the evidence so offered as last offered. To all and every of which decisions of the court, against the admissibility of the several matters so tendered, and offered to be proved on the part of the plaintiff, and so rejected as aforesaid, the plaintiffs excepted.

2. Upon the trial of the issues as aforesaid, the plaintiff's counsel, in opening the plaintiff's case to the jury, before the examination of the evidence, stated the evidence proposed to be introduced by the plaintiff, to support the allegations of circumvention, fraud, misrepresentation, imposition, and deceit in the procurement of said will; among other things, that the defendant, *Caroline Calvert,* being a mulatto slave, and the illegitimate daughter of the defendant, *George Calvert,* by one of his own slaves, had lived with said *Cramphin* in his extreme old age as a mistress, had during their co-habitation in the course of about sixteen years borne eleven children, all of whom she had fraudulently and artfully imposed on him as his, and by her undue and overweening influence had made him believe it, and that said defendant, *George Calvert,* the devisee, trustee, and executor named in said will, had assisted in leading and inducing said *Cramphin* to confide in the genuineness of said children as of his own begetting; whereas, the said children would be shown to have been the offspring of the loose amours of said *Caroline* with other persons, and not the children of said *Cramphin.* Whereupon the counsel for the defendants in like manner, before the examination of any of the evidence, opened the defendants' case to the jury, stating beforehand, the

evidence, and the grounds on which they expected to maintain the validity of said will, and repel the allegations, and evidence of the plaintiff; and among other things, that said *Caroline*, though living with said *Cramphin*, as a mistress, and carrying on an illicit intercourse with him, was in all other respects, of good character and conduct, faithful to him as a mistress, and a tender nurse of his old age, and a useful superintendent of his household. That said children were acknowledged by him, and treated by him with all the care and affection of a father. That they were in fact the genuine offspring of the illicit intercourse between said *Cramphin* and said *Caroline*, a fact evidenced among other things by their strong personal resemblance; and the defendants' counsel then read to the jury the plaintiff's libel, and the said *George Calvert's* answer thereto. In consideration whereof, the plaintiff's counsel insisted to the court, that such opening on the part of the defendants, amounted to a waiver of any objection to the admissibility of evidence touching the true paternity of said children; and consequently, that the evidence offered by the plaintiff and rejected by the court, as set forth in the former bill of exceptions, ought to be admitted, even if strictly inadmissible, without such opening on the part of the defendants. But the court (KILGOUR, and WILKINSON, A. J.) decided that the said evidence was inadmissible, notwithstanding such opening on the part of the defendants. *The plaintiff excepted.*

3. After all the evidence on both sides had been given to the jury, and after the arguments, and summing up of counsel had been concluded, the *defendants* prayed the court to deliver to the jury the following instructions:

1. That it is not a sufficient objection to the papers exhibited as the last will and testament, and codicils thereto, of *Thomas Cramphin*, that the jury should belive, from the evidence before them, that any clause, or part of the same, was not the original, and unprompted suggestion of the testator's own mind, but was first suggested by some other per-

son; provided they shall believe from said evidence, that the testator fully comprehended said suggestion, and with a competent mind adopted and made them his own.

2d. That before the jury can find a verdict for the plaintiff, on the ground, that the said will and codicils were obtained by fraud, or undue influence, they must believe from the evidence in the case, that these particular instruments were induced by such fraud, or undue influence; and that no evidence of influence at other times, or in regard to other matters, can be important, further than as they may enable the jury to form a judgment of the instruments submitted to their consideration, in the issues joined between the parties.

3d. That before the jury can decide against these instruments as obtained by fraud, they must be satisfied from the evidence, that fraud is actually proved. It is never to be presumed, or inferred, without evidence.

4th. That the question, whether the children named in the instrument exhibited as the last will and testament of *Thomas Cramphin*, were, or were not the children of the said *Cramphin*, is not embraced within any of the issues in this cause, and that the evidence to prove, or disprove such paternity, is not relative to any of said issues.

5th. That whether any of the devisees named in said papers, purporting to be the last will and testament, and codicils thereto, of *Thomas Cramphin*, have, or have not a legal capacity to take under the said instruments, is wholly irrelevant to the present issues or any of them.

6th. That if the jury believe from the evidence, that the testator, at the time he dictated, and executed the said will, and codicils, was of sound and disposing mind and memory; and also, if the jury belive from the evidence, that the said testator was not at those times controlled and governed in the making and executing of the same, by the fraudulent suggestions, or undue influence of *Caroline*, or *George Calvert*, or either of them, or by any of the devisees under the will, then they must find for the defendants, on the first seven issues.

7th. If the jury shall believe from the evidence, that the said *Thomas Cramphin* was induced by peruasion, request, or importunity of said *Caroline,* or any other person, to make the said last will and testament, and codicils thereto, still such persuasion, request, or importunity, will not impair the validity of said instrument, unless the jury shall further believe from the evidence, that such persuasion, request, or importunity was fraudulent.

To the granting of which instructions, or any of them, the plaintiff objected, but at the same time prayed the court, that if notwithstanding such objection, the said instructions, or any of them should be granted, that the following additional instructions, as applied to each and every of the instructions so prayed by the defendants aforesaid, be given, to wit:

1st. To the defendants' first prayer, the plaintiff objects, but if granted, prays the following addition to be made thereto.

"But it is for the jury to decide, from all the facts and circumstances in evidence, whether, and in what degree such suggestion, or the adoption thereof, by the testator, was the result of incapacity, or weakness of mind, or of fraud, circumvention, or undue influence."

2d. To the second, the plaintiff objects; but if granted, prays that the following additional instruction may be given.

"That it is for the jury to decide, from all the facts and circumstances in evidence, whether the said will and codicils were obtained by fraud, circumvention, deception, imposition, or undue influence, and that it is competent for the jury to decide from facts, and circumstances of fraud, circumvention, deception, or imposition, or undue influence, precedent, and subsequent to the execution of said instruments, whether such fraud, circumvention, deception, imposition, or undue influence, existed and operated at the time of the execution of said instruments, and in what degree induced the execution of said instrument."

3d. The plaintiff also objects to the third; but if contrary to the plaintiff's objection, the defendants' third prayer be granted, the plaintiff prays the following additional instruction:

"That fraud is not to be considered as a single fact, but a conclusion to be drawn from all the facts and circumstances in the case; that it is not necessary to prove it by direct and positive proof; and though never to be presumed without evidence, it is competent for the jury, and the proper province of the jury to decide, whether it may, or may not be fairly presumed from the facts and circumstances in evidence, and that these issues do not confine the plaintiff to direct proof of actual fraud, but extend to the procurement of said will, and codicils, by circumvention, or by means of dominion, and undue influence over the mind of the testator; and that the said will and codicils may be as well impeached on the ground of having been obtained by circumvention and undue influence, as by proof of actual fraud."

4th. The plaintiff objected to the fourth likewise, because the evidence offered on the part of the plaintiff, to prove that said children were not the children of *Cramphin*, has been altogether excluded by the decisions of the court, as stated in the former exception; but if this fourth prayer of defendants be granted, the plaintiff prays that the following additional instruction may be given:

" That it is competent for the plaintiff's counsel to argue to the jury, as they have argued to the jury, and for the jury to consider, that if it be proved to their satisfaction, from all the facts and circumstances in evidence, that the said will was obtained by fraud, deceit, imposition, circumvention, or undue influence; then the jury may presume, that the acknowledgment of said children in said will was induced by the same unfair means as the rest of the will."

5th. The defendants' fifth prayer was objected to in like terms, but if granted, the plaintiff prays the following additional instruction.

"That though the question, whether the children named in said will, be capable or incapable as slaves, of taking the benefit of the devise, in their favor, or whether the devise over to *Caroline Calvert*, being a free woman, at the time of the execution of said will, takes effect in consequence of the incapacity of said children; or whether the devise over in the last codicil to *George Calvert*, takes effect, in consequence of such incapacity to the exclusion of said *Caroline*, cannot be decided on these issues; yet the capacity of said children to take under such devise, and the character and consequences of said devises over in case of their incapacity, are among the circumstances competent to be argued to the jury, and by them considered in deciding on the several issues, *touching the mental capacity of said Cramphin*, and the fraud, deception, imposition, circumvention, and undue influence, charged in said issues."

6. The defendant's sixth prayer was objected to in similar terms; but if granted, the plaintiff asked this additional instruction.

"That it is competent for the jury, and their proper province, to decide from all the facts and circumstances in the case, whether such fraudulent suggestions or undue influence, acutually operated on the mind of said *Cramphin* at the time stated in the defendants' sixth prayer, and induced him so to dictate and execute said instruments, though such fraudulent suggestions were not made, at the precise time, or times aforesaid, nor any act in the palpable exertion of such undue influence was then committed.

7. A similar objection was made to the granting of the defendants' seventh prayer; but if granted, this addition was prayed to it by the plaintiff.

"Or were carried into effect by circumvention, or by means of undue influence, or dominion over the mind and actions of said *Cramphin*."

The court (KILGOUR, and WILKINSON, A. J.) granted the instructions prayed by the defendant, and likewise all the plaintiff's additional instructions, except the fifth, which

was rejected; and at the instance of the defendant they explained the third, and seventh additional instructions, by remarking, that circumvention and undue influence implied fraudulent practices. The plaintiff excepted to the instructions so granted by the court on the prayers of the defendant; and to the refusal of the court to grant the said additional instructions so prayed by the plaintiff.

*Defendants' fourth exception.* The defendants, when the case was called up, moved the court to modify the issues which had been transmitted from the Orphans Court, so as to make the same correspond in terms to the real question in issue before that court, and to make it involve the single question, whether the papers purporting to be the last will, and two codicils thereto, of *Thomas Cramphin* are, or are not, the true and genuine last will and testament, and codicils thereto, of said *Cramphin;* and also to determine that the respondents exhibiting the said instruments, as such last will and codicils thereto, hold the affirmative of said issues, and bound to prove the genuineness, and legal validity of said papers, and are therefore entitled to open and conclude the case. The court refused the application, and the respondents excepted.

The verdict of the jury being for the defendants, the plaintiff appealed to this court.

The cause came on to be argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, and ARCHER, J.

*A. C. Magruder,* for the appellant.

The issues transmitted to the county court in this case, presented three inquiries. 1. Had the alleged testator at the time of executing the several papers, purporting to be his will, and codicils thereto, that sound disposing mind and memory, without which, no will is valid? 2. Was the execution of these papers procured by fraud, misrepresentation, or undue influence? 3. Was *T. C.* prevented by fraud from revoking them? To this last issue, the exceptions before the court have no relation. The testimony set

forth in the first exception, was designed (in connexion with other proof to be adduced) to prove the incapacity of the deceased, to execute a valid will at the several times when these papers were executed, and also, that the execution of them was procured by fraud, and undue influence. Some of this proof relates to the declarations of *G. Calvert*, which were clearly admissible. 2 *Stark.* 390, and note (*A.*) 1 *Phillips Ev. sec.* 6, 72. *Roscoe*, 28. A part of the proof which was rejected, was offered to prove, that the children of *Caroline*, though described in the will as *Cramphin's* children, were not so in fact, and that two of the defendants, to one or the other of whom, if the will be established, the estate will go, fraudulently represented them to be, and induced him to believe they were his children. Such proof is admissible in a case like this. *Peake's Ev.* 357. 1 *Phil. Ev.* 112. *Goodright vs. Saul*, 4 *Durn. and East.* 356. It was not contended by the plaintiff, that at all times, and in all places, and upon all subjects, the deceased's mind was not sane, and that he could no longer be intrusted with the management of his own affairs. The conduct of those around testators, as well as the imbecility of their minds, is generally the subject of inquiry in courts of justice. *Peake's Ev.* 375. The party alleging a testamentary incapacity is not required to prove an absolute incapacity. The proof of relative incapacity is sufficient. That the particular instrument was the effect of that undue influence which necessarily implies a degree of weakness at the time, and *quoad the instrument*, making it not an instrument arising from the fair bias of his own mind, but from the exercise of an improper influence. *Bates vs. Graves*, 2 *Ves. Jr.* 288. The mind of a testator when he makes his will, must be equal to the work in which he is engaged, *Harrison vs. Rowan*, 2 *Wash. C. C. R.* 580. " If a dominion is acquired by any person over a mind of sufficient sanity for *general purposes*, and of sufficient soundness, and discretion to regulate his affairs *in general;* yet if such dominion, or influence was acquired over him, as to prevent the exercise

of such discretion, it would be equally inconsistent with the idea of a disposing mind ; and perhaps the most probable instance of such a dominion being acquired, is that of an artful woman having taken possession of a man, and subdued him to her purposes." 1 *Cox's Ch. Cas.* 354. The deceased is aged, infirm, and credulous; he is in the hands of a woman who has indeed "taken possession of him, and subdued him to her purpose." He is deceived by those around him, and who would now profit by the deception. It is under this delusion, that he makes his will, leaving to the "woman" by whom he has been induced to believe that he has children, a part, and to these children, almost the entire residue of his large estate, to the exclusion of his heirs. The plaintiff asks leave to prove by what artifices, and misrepresentation, the influence was acquired. "The competency of the mind is to be judged by the nature of the act to be done, and from a consideration of all the circumstances of the case." *Marsh vs. Tyrrel*, 4 *Eccle. Rep.* 51. And is it not an important circumstance, that these children had been imposed upon him as his own, when they were the children of another person, and of course the deceased could be under no obligation to provide for them? But the question here to be considered, is not whether the mind of the deceased was so far enfeebled, as to hinder him from making a valid will under any circumstances, but whether *this will* was not obtained by fraud, and the exercise of undue influence. It has been correctly said, that "fraud is included in all questions of *non-compos*, which pre-supposes the formal act." "The mind must be free, and not moved by fear, fraud, or affection. 7 *Bac. Abr.* 303. Fraud is any kind of artifice by which another is deceived. 1 *Mad.* 256. In such a case as this, it may be said, "if we see the least spark of imposition at the bottom, or that the donor is in such a situation with respect to the donee, as may naturally give an undue influence over him. If there be the least *scintilla* of fraud in such a case, the court will interfere." 1 *Mad.* 283. *Green vs. Skep-*

*worth*, 1 *Eccles' Rep.* 34.   In *Clark and others vs. Fisher*, *et al.* 1 *Paige's Ch. Rep.* 171, the sister-in-law of the deceased procured from the *Alms House* a child, which she imposed upon the testator as her child, the daughter of his brother whom she had married, and of course his niece. Under this belief he left this girl one-fourth of his estate. This testimony was not only received, but was deemed of some weight in the decision of the case.   See also, *Patterson vs. Patterson*, 6 *Serg. and Rawl.* 55, and *Dietrick vs. Dietrick*, 5 *Ib.* 207.   It may be said however, that if fraud was practiced in this case, it was practiced by the mother, and others, and not by the children, and therefore that the will, so far as it makes provision for them, ought not to be set aside.   In the case already referred to in *Paige's Ch. Rep.* the will was set aside, although the little girl, the supposed neice, was innocent of the fraud.   14 *Ves.* 289.

2. Upon this exception it is contended, that the statement made by the defendant's counsel, and the answer of *Calvert*, under oath, read as proof, to influence the verdict, gave the plaintiff the right to offer the testimony set forth in the former exceptions, even although it was originally inadmissible.   It ought at all events to have been received as rebutting evidence, to counteract the effect of that statement, and to contradict the answer.

3. This exception is taken to various instructions given by the court to the jury, at the instance of the defendants. It may be contended, that the additional instructions given on the prayer of the plaintiff, precludes her from complaining of the former, as by these she could not be injured. This assumes, what with respect to some of them cannot be denied, that they are palpably inconsistent with each other. It does not follow, however, that no injury is done to the plaintiff.   A party has a right to insist that the court shall give to the jury no instructions which are not correct, and by which he may be prejudiced; and that the court shall so expound the law to the jury, that they shall not be left to

judge to which of two instructions, contradicting each other, they are bound to pay respect.

The first instruction makes the paper in question the will of the deceased, although suggested by some other person, if the jury believed he fully comprehended the suggestions, and with a competent mind made them his own, no matter though he was moved by an influence which he was too weak to resist. There may have been proof in the case that these suggestions were made by those who had previously incensed him against his blood relations, and might not these feelings thus produced, have caused him to make these suggestions his own? *Bennet vs. Vade, 2 Atk. 327.* A last will and testament, says *Swin. ch.* 3, *p.* 16, "is an advised purpose of the testator's mind. In it we should show ourselves both wise and just. Our testaments and last wills ought to be framed on discretion, and built on sound and constant determination."

2. This instruction assumes, that at other times and by some body, and in relation to other matters, an undue influence had been exercised. Of course it might have been exercised by the very persons who are charged with having procured the will, by the exercise of an undue influence. Yet proof of this undue influence having been successfully exercised, can be of no value to the plaintiff; it is not competent unless the proof of its existence and influence at other times, will enable the jury to form a judgment of the instrument submitted to their consideration.

3. According to this instruction, the fraud alleged must be actually proved, or the jury cannot decide that these instruments were obtained by fraud. If this be the law, our testimony, had it been admitted, would have been of no value, as the purpose was to establish the fraud by circumstances, from which, when combined, it was to be inferred. *Harrison vs. Rowan,* 3 *Wash. C. C. Rep.* 580. 2 *Eccl. Rep.* 131. Sir *John Nicholl* observes, "cases of fraud, if tolerably well concerted, are generally speaking, only to be

detected and defeated by induction of particulars, many perhaps apparently trivial."

*Fourth instruction.* The court had already excluded all the testimony relative to the paternity of the children, and now, after withholding that proof from the jury, they instruct them that it is entitled to no weight whatever, "because it is not embraced within any of the issues."

In the *Pennsylvania* cases which have been cited, the only issue was *devisavit vel non.* The issues in this case are sufficient to authorise the introduction of any testimony whatever, which could be admitted to impeach the will upon any ground. Who was the father of these children is not a question expressly submitted to the jury in this case for their decision. But if our allegations with respect to these children, their paternity, and the deception practiced upon this old man, relative to their paternity, be true, then, from these truths, with other matters proved in the cause, the jury could legitimately infer all that we allege in regard to this will. The evidence to establish undue influence is usually "compounded of ingredients, various in their number, and remote in their consequences and connexion." In the *New York* case, not only was the falsehood, relative to the little girl, admitted in proof, but it was pronounced a palpable fraud to impose upon the testator as his niece, one not connected with him, and the rule was urged and relied on, *falsus in uno falsus in omnibus.*

The *fifth instruction* decides, that the legal capacity of the children to take, was a question wholly irrelevant to the issues. It is not contended by the plaintiff, that a devise to one, who is not competent to take, necessarily avoids the will. But it is maintained, that the provisions of the will may be looked at, as among the circumstances whence the fraud and undue influence are to be inferred. The testator must be capable of disposing of his property, not only in reference to the amount of it, but also in reference to the situation of those who are, or ought to be the objects of his bounty. *Clark vs. Fisher,* 1 *Paige,* 173. He must have the

capacity of recollecting, discerning and feeling the relations, connexions and obligations of family and blood. 2 *South. Rep.* 455. A party impeaching a will may give evidence that it is an unreasonable one. 6 *Serg. and Rawle*, 55. In the case before us, all of those who have claims—his numerous relations—are entirely overlooked, and those for whom he is made to provide, may indeed be considered strangers to him, and are incapable of taking property by any description whatever. The issue "*devisavit vel non*" involves the validity of the execution, and not the contents of the will, yet, said the Judges in *Pennsylvania*, the contents, as far as they have a bearing on the question of execution, are pertinent, and with this view the whole will is usually read.

*Sixth instruction.* The error of this instruction consists in saying, that the deceased must be shown to have been controlled and governed by the fraudulent suggestions at the time of executing the will. Perhaps the woman who lived with him had suggested, at various times, that his relations had ceased to respect him. Perhaps such suggestions had the effect of prejudicing and incensing him against them; and they may have been designed to induce him at once to make his will, unless, if postponed, his capacity might be questioned by his relations; still if the law is correctly expounded by the court in this instruction, the jury could not consider proof of the above circumstances in forming their verdict.

*Seventh instruction.* A will may be void as being the result of over importunity, though such importunity is not fraudulent. Any importunity which imposes a constraint on the testator, which takes from him the perfect freedom of his mind, will avoid the will, though it may not amount to fraud. 1 *Swin.* 22. It was the province of the jury to decide, from a consideration of all the circumstances, whether the testator was controlled by improper influence, and the object and effect of the instructions of the court being to prevent this, the judgment must be reversed.

*Swan,* R. S. *Cox,* and *Johnson* for the appellees.

In this case certain distinct issues were made up in the Orphans Court, and sent for trial to the county court, and not the general issue of *devisavit vel non,* and it is not true that any evidence which would have been admissible under the latter issue, should have been received here.    These instruments remained in the testator's hands from 1825 to 1830, without any attempt on his part to alter or revoke them.    The presumption of law, is now strongly in their favor, and that the proof adduced to asail their validity, was insufficient for that purpose.    The evidence, for and against the will, is not in the record, though it was the duty of the appellant, who prepared the exceptions, to have inserted it, that this court might see clearly whether error has, or has not been committed.    It is not sufficient that the appellant should say he offered certain evidence in itself immaterial, in connexion with other circumstances which might make it relevant, without stating those other circumstances, that the court may see how far its admissibility is affected by the omitted circumstances.    In the absence of such proof, every presumption is to be made in favor of the judgment. There is no evidence of the influence of *Caroline,* which has been the subject of remark, nor of the magnitude of the testator's estate, nor of his estrangement from his relations.    The record, says the appellant, offered cer-tain proof, upon which she relied, but what it was, does not appear, and consequently the evidence in the record can derive no aid from the other circumstances with which it was said to be associated.

1st. It was proposed to prove Mr. *Calvert's* declarations in 1830, in relation to the children, as a *substantive* and in-dependent piece of evidence, to vacate a will which was made five or six years before.    Such declarations, made at such a time, could have no tendency to prove incapacity or influence; nor could they under any circumstances, be evi-dence to defeat a will in which other persons were interest-ed, and claim rights under it totally distinct and separate from him.

Davis *vs.* Calvert, *et al.*—1833.

Evidence of the character of *Caroline* was equally inadmissible. The intercourse between her and the testator commenced eleven years before the will was made, and the attempt is to destroy the will, by proving her conduct to have been dissolute prior to that period. It is not possible to accomplish such a purpose by such means, particularly when presented as an insulated fact. Proof of her misconduct, during the intercourse between her and the testator, was also offered for the same purpose, though such misconduct was unknown to the testator. If the proof offered had been, that he knew of her misconduct, and notwithstanding such knowledge, devised her his estate, it might be evidence to show either a want of capacity, or that her ascendency over him was such as to deprive him of his free will; but surely no such inference can be deduced from facts, of which the testator was ignorant. The offer to prove that the testator was not the father of the children, is not free from ambiguity. It does not appear which were referred to, those born before, or those subsequent to the execution of the will. But suppose it refers to those who take a beneficial interest under it, it is evidence, when standing alone, to prove either incapacity or undue influence over the testator's mind. The cases cited on the other side, in which this inquiry has been indulged, are cases in which the capacity of the devisee to take, has been the subject of examination, or where the imputed paternity appears to have been the moving cause with the testator; as where a man makes a devise to another, supposing him to be his brother, if he turns out not to be, the devise fails; or where the character of the devisee is mistaken by the testator, and the party benefited is guilty of the imposition. *Kenwell vs. Abbott,* 4 *Ves.* 802. *Ex parte vs. Wallop,* 4 *Bro. Ch. Rep.* 90. But in cases like the present, inquiries, as to the paternity of parties, has never been permitted. *Wilkinson vs. Adam,* 1 *Ves. and B.* 422. *Ib.* 453. *Ib.* 462. *Gordon vs. Gordon,* 1 *Merrivale,* 141. The supposed relationship of

the devisees to the testator in this case, does not appear to have been the operating motive of the will.   With respect to *Caroline*, the language used seems to have been intended as a mere *descriptio personæ.*

The proof proposed to be offered, with regard to the physical capacity of the testator, could only have consisted of opinions.   The facts, from which such an opinion could be deduced, were already before the jury, and it would be strange if the opinions of witnesses, in relation to the capacity of the testator to be the father of the devisees, should be permitted to influence the decision of the jury, with reference to his capacity to make a will; more particularly when relied on as an isolated fact for *that purpose.   As to* Mr. *Calvert's* belief of the paternity of these children, surely that could have no influence on the verdict, one way or the other, and of course it was not admissible evidence.

The object of the evidence in this exception was not merely to defeat particular portions, but the whole will; as well those for the benefit of persons of admitted capacity to take, and to whom nothing improper is imputed, as those whose competency is doubtful, and conduct suspicious. Evidence showing that part of a will is void, is not admissible, in the trial of an issue, going to the entire instrument; neither are remote and collateral facts admissible. 3 *Stark. Ev.* 380. *Kenwell vs. Abbott,* 4 *Ves.* 802. *Plume vs Beale,* 1 *P. Wms.* 388.

. 2. Upon the second exception they contended, that the defendants had offered no evidence, which the proof proposed to be given by the plaintiff could be necessary to rebut; but if they had done so, still, if it was not pertinent, rebutting evidence would be inadmissible. *Stringer et al. vs. Young,* 3 *Peters,* 320. *Ib.* 337. *Walkup vs. Pratt,* 5 *Harr. and Johns.* 56.

*Third exceptions.* In considering the instructions of the court, in this exception, it is not necessary to enquire, whether, as originally prayed by the defendants, they were

correct, or not. If the qualifications afterwards given, upon the prayers of the plaintiff, make them sound, the judgment must stand, as the inquiry always is, has the law been correctly expounded to the jury. If it has, neither party can complain. These instructions are to be viewed as if the qualifications had formed a part of defendants' prayers, and had been originally incorporated in the instructions as actually given to the jury.

The objection of the plaintiff is to the prayers, as made by the defendants, and not to the instructions of the court, as modified at the instance of the appellant. When the plaintiff asked for the modifications, the defendants' prayers are to be considered as having been granted, and that distinct prayers, corresponding with these modifications, are made by the plaintiff; and if so, he cannot object to the instructions as modified, as they are the result of his own prayers. And the exception is so framed, being not to the instructions as actually given, but to the prayers as made by the defendants. Suppose, for example, the instructions as prayed by the defendants were right, and the error consisted in their modification upon the plaintiff's application; would he be allowed to reverse the judgment, for an error so induced? If the law was properly expounded to the jury, by the instructions taken collectively, the judgment will not be reversed, though some one opinion may be erroneous. *Craycroft vs. Craycroft,* 6 *Harr. and Johns.* 57. *Coale vs. Harrington,* 7 *Ib.* 147. 3 *Gill and Johns.* 450.

With reference to the first instruction, it does not appear what the suggestion complained of was, or what clause of the will, was the result of such suggestion. It may have been simply in relation to the *mode* in point of law, of accomplishing the testator's intention, or in regard to some inconsiderable provision, and for such a suggestion, it is proposed to vacate the *whole will.* If such be the law, few of the complicated testamentary dispositions now in use, would stand, as they are never made, and can never be made, without the advice, and suggestion of counsel. Surely,

when a party objects to a will, on account of the suggestions of others, he should show what those suggestions are.

The second instruction supposes a capacity to devise, and leaves the will obnoxious only to the charge of fraud, and misrepresentation in making it; and this is the precise point presented by the issue, which does not extend to frauds, &c. at other times. But the qualification extends the field of inquiry, to acts, prior, and subsequent to the execution of the will, in order to enable the jury to determine, whether it was, or was not the result of fraud.

*Third instruction.* This instruction does not say that fraud must be positively proved, but that it must be *actually* proved, either directly, or indirectly, positively or circumstantially; and when the court say, fraud cannot be be presumed, the meaning is, that it cannot be presumed without evidence. *Hovenden,* 17 to 27. In the fourth instruction, the court is assumed to have been right in rejecting evidence, as to the paternity of the children, and the evidence being excluded, it follows, that the jury should not have been influenced by any thing which may have been said in the argument upon that subject.

The sixth instruction was given without qualification, and submits to the jury every question, except the capacity, or incapacity of the devisees to take. This is a mere question *of law,* and not fit for the consideration of the jury. It certainly cannot be said, that a man of sound mind, and in all other respects competent to make a will, has died intestate, because he has committed a mistake in the legal capacity, of some one, or more of the objects of bounty. Besides, in this particular will, the subject of the capacity of the devisees appears to have been in the mind of the testator, and the contingency of their incapacity is provided for. It is clear, therefore, that he was *not deceived,* upon which ground alone, a will may be impeached for such a cause. It would be singular indeed, if a will should be vacated on account of a contingency, which the testator had anticipated, and guarded against.

In support of the sixth and seventh instructions, they cited *Swinburn*, 22, 887.

*Jones*, and *R. J. Bowie*, in reply.

The argument on the other side is, that our evidence only impeaches portions of the will, or the competency, or fraud of particular devisees. The first answer to this argument is, that these papers consist of a will, and two codicils, and some one or more of them, may be set aside, and the rest be established. It was certainly competent for the caveators to caveat one, or all; and if one alone could be attacked, why, when all are caveated, may not one be defeated, and the rest stand? The question here is, whether evidence, which impeaches a part only of a testamentary disposition of property, when the whole is caveated, has not in some degree, and to some extent, an influence upon the whole. Why should not a will be destroyed in detail, as well as altogether? It is surely competent to us, to show a fraud in one party, or in one part of the instrument, then another, and so on, until the whole is prostrated, and the same may be said of every ground, upon which the validity of this will is assailed. The question in this case, is a question of *probat*, involving the validity, and not the construction of the instrument, and the court of probat consequently is the proper, and only tribunal for its decision. A court of chancery has no jurisdiction in cases of this description, that court having nothing to do with the probat of wills, its office being only to expound them. It cannot decide on their validity. *Rob. on Wills.* 2 *Atk.* 324. 1 *Fonb.* 69, *note (a.)* 7 *Back. Abr.* 381. *Plume vs. Beale*, 1 *P. Wm.* 388.

*First exception* as to the declarations of *Calvert*. The first objection to the admissibility of these declarations is, that it does not appear to which of the children they refer: whether to the *ante nati*, or *post nati*. But they are spoken of, as the said children, which of course points to those who are named in the will, and issues, or at all events, it relates to all, including those so named. The expression

cannot refer exclusively to those who are not named in the will. The objection that his declarations are inadmissible as hearsay, does not seem to stand upon better grounds. He is the executor, and legal owner of the personal estate, and represents the rights of all the parties, and as their interests are inseparable, if the declarations referred to, are not evidence against the other parties, they are not evidence as against him; and in that way, if all the parties concerned had made separate declarations, affecting the validity of this will, they could not be received, because the declarations of each might be rejected, as injurious to the other parties. The fact is, however, that the declarations of any of the parties would be evidence rgainst the rest. 1 *Phil. Ev.* 74, 75. *Harrison vs. Vallance,* 1 *Bingham,* 45. 4 *Stark.* 39 to 48. *Bauerman vs. Radenius,* 7 *Term. Rep.* 663. *Hanson vs. Parker,* 1 *Wilson,* 257. *Dowden vs. Fowle,* 4 *Camp.* 38. *Bell vs. Ansley,* 16 *East.* 143. *King vs. Inhabitants of Hard.* 11 *Ib.* 578. *Curry vs. Walter,* 1 *Esp. Cases,* 458. *Whitcomb vs. Whitney, Doug.* 652. *Wood vs. Braddick,* 1 *Taunt.* 104. *Peake's Cases,* 203. *Nicholls vs. Dowding & Kemp,* 1 *Stark. Cas.* 81. *Lucas, et al. vs. De La Cour,* 1 *Maul. and Selk.* 249. *Bac. Abr. Title Ev.* 673.

Even if the expression could be considered equivocal, still it was for the jury to weigh it. It was certainly admissible in *limine* on the part of the plaintiff, though subsequently, it might have been competent to the defendant, to ask the court to withdraw it from the jury.

There is no part of the evidence offered in the first bill of exceptions, but has a *tendency* to prove the questions in issue, taken either collectively, or individually, and having a tendency, it was admissible, though its weight may have been inconsiderable. *Davis vs. Barney,* 2 *Gill and Johns.* 382.

But the evidence was offered *collectively,* and not separately, and considered collectively, the effect on the decision of the jury must have been conclusive against the will. 1 *Phil. Ev.* 111. 2 *Evans Poth.* 29. To show what is

deemed a sound, and disposing mind, they referred to 2 *Southard*, 454, 458, 661, 667, 670. 1 *Coxe's Cases*, 355. *Clark vs. Fisher*, 1 *Paige*, 173. *Swinb.* 29. 3 *Stark. Ev.* 1704, 1705.

Cases have been cited to show, that parts of a will may be void, and parts good. This in some cases may be so, but when the objection is founded, upon both fraud and imbecility, if any part is void, the whole must be void, and if fraud has been committed, it is of no consequence, whether the party benefited is guilty or innocent. The will in either case is void. 14 *Ves.* 285.

It has been argued, that the plaintiff did not except to the instructions, as actually given to the jury. But the objection was to each instruction as prayed, and the whole then, were excepted to as granted.

It is impossible to contend, that a party has forfeited the benefit of his exception by moving additional instructions, because, although he objected to the defendants' prayers, he was compelled when they were granted, to assume in the further progress of the case in the county court, that they were right, and he was authorised, while reserving his exception to them, to ask for additional, or explanatory instructions; nor is there one of the original prayers, that are not erroneous now, if they were wrong as prayed, notwithstanding the additional instructions, and this must be the case, unless the court, in according the additions, meant to take back and reverse their former opinions.

1st. As to the first instruction. As an abstract rule of law this opinion may not be objectionable, but in its application to this case, it is clearly erroneous, because it separates a part of the evidence from the rest, and says that the part so separated, is not sufficient for the purpose, for which it was adduced; thus *destroying entirely*, the effect of a circumstance, entitled to some weight, and necessarily misleading the minds of the jury.

2d and 6th instructions. These they consider together. The objection to them is, that they limit, and qualify the

effect of the plaintiff's proof, by restricting the inquiry to the circumstances attending the making of this particular will, when he was entitled to lay before the jury, any circumstance going to show that the testator was not a *free agent*, without reference to time or place. And it is not material how the alleged influence over the testator was acquired, whether by fraud or superior intelligence, or in any other way. If it exist, and is exerted in inducing a will which would not otherwise have been made, it is void.

3d. The court in this instruction, say to the jury, that fraud is not to be presumed without evidence, which means proof of *actual fraud;* and they qualify the additional instructions, by saying, the circumvention and undue influence, mean, "fraudulent practices," and of course "fraudulent practices" must be proved, before a case of circumvention or undue influence can be established.

Now, it is perfectly clear that an overpowering mental dominion may be exerted, altogether depriving a party of freedom of will, without any fraud whatever. Besides, fraud, circumvention, and undue influence are stated in the books, as distinct grounds upon which wills are impeached, and they can hardly therefore be deemed, as meaning the same thing. 1 *Swin.* 22, *and note.* 1 *Fonb.* 72, 73.

In the 7th instruction the court say, that importunity to defeat a will, must amount to fraud. This is not so. If the importunity be such, that the testator cannot resist it, the will is void, though neither deceit nor misrepresention be practiced, and although the party using it, is not benefited by the will, and his motives are fair and meritorious.

4th. In this instruction the court say, that evidence of the paternity of the children is inadmissible, as *not being* within the issue. It is quite clear, however, that a distinct issue on this subject, could not have been framed. It would have been immaterial to the question to be tried, though the proof tends to maintain the affirmative of some of the issues. It is a circumstance conducing to the great object of show-

ing an imposition upon the testator, and consequently was admissible. *Dietrick vs. Dietrick,* 5 *Serg. and Rawle.* 207.

The issue need never set out all the circumstances, necessary to establish the fact, to which they tend. The issue points to the result, and all the circumstances which may fairly conduct the mind to the result aimed at, are relevant and admissible in evidence.

5th. The incapacity of the children to take the bounty intended for them by the testator, is considered a material circumstance, as going to show, that by imposition, or fraud, or mental imbecility, the object of the testator was likely to be fustrated, and a direction given to the property, which, it is perfectly clear, he never contemplated. The evidence shows that the disposition of the estate, under all the circumstances, was not a rational one, and upon that ground was admissible. 4 *Stark. Ev.* 1708.

BUCHANAN, Ch. J., delivered the opinion of the court.

This case comes up on appeal from the *Montgomery* County Court, on exceptions taken at the trial of issues sent to that court from the Orphans Court of the same county, upon a *caveat* against the admission to probat of certain instruments of writing, purporting to be the will of *Thomas Cramphin,* and the several codicils thereto.

There are three bills of exception, the two first to the rejection by the court of evidence offered on the part of the appellant to impeach those instruments, and the third to a series of instructions given by the court to the jury after the testimony was closed.

There is no question before us relating to the construction of the will. Nor is it a question before this court, whether the evidence offered, if true, would be sufficient to sustain the issues on the part of the appellant. That is not a subject for consideration on this appeal.

All that we are called upon to do, and can legitimately do, is to decide upon the competency of that evidence, and

the correctness of the instructions given to the jury, to do which it is necessary to see what the issues are.

They are eight in number.

The first, whether *Thomas Cramphin*, at the several times of signing the respective instruments of writing, was of a sound and disposing mind.

2. Whether, at the several times of signing them, he was urged thereto by such importunities of the appellees, or either of them, as he was too weak to resist, and under circumstances which left him not free to act in the disposition of his estate?

3. Whether his several signatures thereto were his own free and voluntary acts, with a knowledge of the contents of the several instruments, and without the exercise of an undue influence by the appellees, which in his then situation, and then imbecility of mind, prevented him from making a disposition of his property according to his own free will?

4. Whether the execution of the instruments was procured by fraud, and misrepresentation of the appellees, or any of them, or by others acting with the privity, and by the directions of them, or any of them?

5. Whether in the situation in which he was placed, and under the circumstances connected with the execution of the instruments, at the several times when they were executed by him, he was capable of knowing their contents, the manner in which they disposed of his estate, and of withholding his assent thereto?

6. Whether they are void by reason of undue influence, fraudulent devices, impositions, misrepresentations and deceits, practiced upon him by *Caroline Calvert*, or by *her* procurement, to induce him to execute them?

7. Whether they are void by reason of undue influence, fraudulent devices, and misrepresentations practiced upon him by the appellees, or any of them, to induce him to execute them?

8. Whether at any time subsequent to their execution, he was desirous of altering them, and whether he was prevented by the management, fraud, undue influence, or

importunities of *Caroline Calvert*, and *George Calvert*, or either of them, or others by their procurement?

The first relates to mental incapacity. The second to undue importunities by the *appellees*, or one of them. The third to undue influence by the appellees. The fifth to the capability of *Cramphin* to know the contents of the instruments, and to withhold his assent, under the circumstances connected with the execution of them. The fourth, sixth, seventh, and eighth, relate to undue and fraudulent practices. They are substantially the same as respects the *means* supposed to have been employed, but differ as to the persons employing them. The fourth looking to the *appellees*, or *some* of them, or to *others* acting with the *privity* and by the *directions* of *them*, or *some* of them. The sixth to *Caroline Calvert*, or *some others* by *her* procurement. The seventh to the *appellees*, or *some* of them; and the eighth to *Caroline Calvert*, and *George Calvert*, or *one* of them, or *others* by their procurement.

The questions then, that were presented to the jury for trial upon these issues, are questions of *Mental incapacity—Undue importunity—Undue influence—And of fraud.*

The third section of the first sub-ch. of the act of 1798, ch. 101, provides, "that no will, testament or codicil, shall be good and effectual for any purpose whatsoever, unless the person making the same, be, at the time of executing or acknowledging it, of sound and disposing mind, and capable of executing a valid deed or contract." These latter words, "and capable of executing a valid deed or contract," are of importance, in the investigation of every question touching the mental capacity of a testator. He who is not competent to execute a valid deed or contract, is, under the testamentary system of this State, incompetent to make a valid will or testament. It is not sufficient of itself, that a testator should be able to describe his feelings, or give correct answers to ordinary questions. His feelings at the moment may dictate his description of them, and the questions may prompt the answers, and yet he may be inadequate

to the transaction of other business, and unable to dispose of his estate with understanding and discretion.

The written law of this State furnishes the rule, by which the capacity of a testator is to be measured; and the inquiry must always be, whether, at the time of executing or acknowledging the will or testament, he was capable of executing a valid deed or contract; that is here, the standard by which the mental capacity of a testator is to be ascertained, and no *inferior grade of intellect will suffice.* That state of mental capacity is to be determined by the condition of the testator's mind, at the time of his executing or acknowledging the will or testament.    For notwithstanding his incapacity at a prior or subsequent time should be proved, it does not necessarily follow that he was incompetent when the will or testament was made, as his incapacity before or after that time might have been the effect of a temporary cause.    But for the purpose of shedding light upon the state of his mind, at the time the will or testament was made, evidence of its condition, and of his bodily imbecility, both before and after that period, may be produced. And a jury may, upon the whole evidence infer incompetency at the time of executing or acknowledging the will or testament, according to the character and cause of the entire incapacity proved; which may be established by proof of the conversations or actions, or declarations of the testator inconsistent with sanity, or of all of them taken together.    The general maxim is, *semel furibundus semper furibundus præsumitur.*    It is not of itself sufficient to avoid a will or testament, that its dispositions are imprudent, and not to be accounted for.    But a will or testament may, by its provisions, furnish intrinsic evidence, involving it in suspicion, and *tending* to show the incapacity of the testator to make a disposition of his estate, with judgment and understanding, in reference to the amount and situation of his property, and the relative claims of the different persons who should have been the objects of his bounty—such as a disposition of his whole estate, to the exclusion of near

and dear relations, having the strongest natural claims upon his affection: a wife and children for instance, or other near relations, without any apparent or known cause, which alone would be a suspicious circumstance, although not furnishing *per se* sufficient ground for setting aside the instrument.

This is but a single example, and not given as the only one, calculated to excite suspicion of the competency and freedom to act of a testator. The contents, therefore, of of the will or testament itself, and the manner in which it was written and executed, together with the nature and extent of the estate of the testator; his family and connexions; their condition and relative situation to him; the terms upon which he stood with them, and the claims of particular individuals; the condition and relative situation of the legatees or devisees named; the situation of the testator himself, and the circumstances under which the will or testament was made, are all proper to be shown to the jury, and often afford important evidence in the decision of the question of incapacity. And sometimes if taken altogether, may according to the degree of the injustice, absurdity, or unreasonableness of the dispositions attempted to be made of the property, tending to induce a reasonable doubt of the necessary sanity of the maker, and of his free agency uncontrolled by some undue influence, and the nature of the attending circumstances, and condition, and conduct, and character of those around him, justify a jury in deciding against the validity of the instrument, when its provisions, standing alone, unattended by such circumstances, or not coupled with them, would not be sufficient.

Fraud is a distinct head of objection from importunity and undue influence. Importunity and undue influence may be fraudulently exerted, but they are not inseparably connected with fraud: nor is it every degree of importunity that is sufficient to invalidate a will or testament. Honest and moderate intercession or pursuasion, or flattery unaccompanied by fraud or deceit, and where the testator has

not been threatened or put in fear by the flatterer or persuader, or his power or dominion over him, will not have that effect. But there may be great and overruling importunity and undue influence without fraud, which, when established, may and ought to have effect, (under circumstances) to avoid a will or testament. Such as the immoderate, persevering, and begging importunities and flattery of a wife who will take no denial, pressed upon an old and feeble man, which may be better imagined than described: or dominion obtained over the testator under the influence of fear, produced by threats, violence, or ill treatment. In neither of those instances, may there be any direct fraud; but an overruling influence upon the mind and feelings of a testator, according to the degree of his judgment and firmness.

To persuade or importune merely, is not to defraud, neither is it a fraud to threaten or ill treat, where there is no false impression, no deception practiced ; but it is the moving cause of a pervading fear operating upon, and governing the will and actions of the person so put in fear, and controlling, and restraining the fair bias of his mind. Open violence is usually the opposite of fraudulent and deceitful practices ; but not less destructive of the validity of a will or testament made under its influence. A testator should enjoy full liberty and freedom in the making of his will, and possess the power to withstand all contradiction and control. 1 *Swinbourne on Wills*, 22. That degree therefore of importunity or undue influence, which deprives a testator of his free agency ; which is such as he is too weak to resist, and will render the instrument not his free and unconstrained act, is sufficient to invalidate it. *Kirloside vs. Harrison*, 1 *Eng. Eccles. Rep.* 336. 3 *Stark. Ev.* 4 *part*, 1707. Not in relation to the person alone, by whom it is so procured, but as to all others, who are so intended to be benefiited by his undue influence.

That is the settled principle running though the books of authority, and is equally applied to cases of fraud as in *Bennet,*

*vs. Wade and others,* 2 *Atk. Rep.* 324. *Ex parte Fearen,* 5 *Ves.* 633. *Ex parte Wallop,* 4 *Br. Ch. Cas.* 90, and 4 *Ves.* 890. *Huguerin vs. Bosley,* 273. 7 *Bac. Ab.* 303, 304. If it were otherwise the guards thrown by law around testators, and the interest of those having just and natural claims upon them, would afford but a very feeble protection; as he who procures a will by fraud, misrepresentation, imposition, or undue influence, may readily procure the property to be given to others instead of reserving it directly to himself, No: but in the language of *Ld. Chief Justice Wilmot,* in *Bridegroom vs. Green,* "whoever receives it, must take it tainted and infected with the undue influence and imposition of the person procuring the gift; his partitioning and cantoning it out among his relations and friends will not purify the gift, and protect it against the equity of the persons imposed upon. 14 *Ves.* 289. And so in 2 *Bac. Ab. (Gwill. Ed.)* 303, 304. "If a man by occasion of some present fear or violence, or threatening of future evils, does at the same time or afterwards, by the same motive, make a will, it is void, not only as to him who puts him so in fear, but as to all others.

So that to avoid a will or testament, it is not necessary that threats or violence should have been practiced or resorted to, at the time of making it, but it is enough, if it was made at any time afterwards, under the general controlling and continuing influence of fear or dominion over the testator, by the person who so put him in fear; though not immediately exercised in regard to that particular instrument.

Fraud vitiates every thing with which it is connected. A will or testament therefore, which is obtained by fraud is void, and though fraud is never to be presumed, yet it is not necessary to prove it by positive and direct testimony. But being usually wrapt up in mystery, if well concerted, it is generally by circumstances only, by inductions of particulars, some of them often apparently trivial, that it can be brought to light and defeated. And in a question

of fraud, any fact, no matter how slight, bearing at all on the point at issue, and not wholly irrelevant, may be admitted. But the circumstances, when combined and considered by the jury, should be so strong as to satisfy them of the existence of the fact, they are offered to establish.

It is a well settled rule of evidence, that remote and collateral facts and circumstances, not pertinent or relevant to the issue to be tried, are inadmissible in evidence. They are not only useless, but as they are calculated to distract the attention of the jury, they may be mischievous, and tend to prejudice and mislead them. But it is equally well settled, that facts and circumstances, tending to prove the issue, are admissible. Nothing that is pertinent or material to the issue joined, and tending to prove or disprove it, is inadmissible, if offered to to be established by competent testimony, and it is the duty of the judge, in the exercise of a sound discretion, to discriminate between such facts as are merely collateral and foreign to the issue, and such as are connected with it.

It is sometimes difficult to ascertain, whether a particular fact offered in evidence is connected with the issue, and will or will not become material in the progress of the investigation. In such cases, the court not clearly seeing that it is wholly foreign and irrelevant to the issue, and cannot be connected with it by evidence of other facts and circumstances, it is proper and usual in practice to admit the proof, on the assurance of the counsel who tenders it, that it will turn out to be pertinent and material; otherwise material and important testimony might frequently and injuriously be excluded, which it is the province of the court to guard against, when it may be done. As where the matter in issue depends upon a variety of facts and circumstances, to be proved in different ways, and by different witnesses, the whole of which cannot always be presented to the court at one view, the relevancy of any one of which, standing alone as a mere isolated fact, may not clearly appear, and could only be shown by a disclosure of the whole in

proof; and yet the rejection of it, have the effect to destroy the force of all the rest, when the whole taken together would be conclusive of the question. And when it does not clearly appear *a priori*, that a fact offered to be proved, is collateral and irrelevant, there is generally less mischief to be done or apprehended by admitting it, though it should afterwards turn out to be merely collateral, than by the rejection of the proof of a fact, only because standing alone, it does not plainly appear to be connected with the issue, but may, when connected with other facts and circumstances, become material and important. In short, no competent means of ascertaining the truth ought to be rejected; and all the surrounding facts of a transaction that can be established by competent evidence may be submitted to a jury, who are the judges of their force and effect. Applying these principles of law, and rules of evidence to the present case, the testimony offered at the trial on the part of the appellant, and rejected by the court, should have been suffered to go to the jury, as evidence of facts relevant to, and tending to prove the issues on her part.

It is contended on the part of the defendants, that the existence of the facts and circumstances offered to be proved, were not put in issue, and therefore properly rejected.

It is true, that they were not put in issue, nor was it necessary that they should have been; but they were offered to establish the facts that were put in issue—mental incapacity, importunity, undue influence, and fraud; and if relevant to either of those issues, they were proper to be submitted to the jury, no matter how slight they may be supposed to be, whether taken separately or collectively. In the plea of *per fraudem*, has it ever been held necessary to set out every minute circumstance, by the aid of which, the fraud alleged is proposed to be unveiled? The fraud imputed is one thing; the evidence by which it is to be established is another, and quite a different one.

The only questions here, then are, first, whether the tes-

timony by which the facts were proposed to be proved, was competent evidence for that purpose: and secondly, whether those facts, if established, are relevant and bear upon the points in issue, or any of them.

The first of these questions is settled by the record; the first bill of exceptions stating that they were offered to be proved by competent and credible witnesses.

As to the second, it appears that *Caroline Calvert*, who is the reputed illegitimate daughter of *George Calvert* by a female slave, was not the wife of *Thomas Cramphin*, but his kept mistress: that at the time of his forming that illicit connexion with her, he was about seventy-five years of age; that, at that time, she was the slave of *George Calvert*, her reputed father, and continued in that condition until two days before the will was made, when she was emancipated by *Calvert, Cramphin* being then about eighty-five or eighty-six years old: that between the time when the connexion was formed, and the date of the will, she had the seven children named in the will, and one other who was then dead, and afterwards and before his death, which was some time in December, 1830, three others, who are still living, and not provided for, though born free, (being after their mother's emancipation,) and capable of taking; that the deed of emancipation of *Caroline Calvert*, the mother, contains a manumission of her seven children provided for in the will, to take effect *in futuro*, at certain specified periods, in relation to the males, on their attaining respectively the age of twenty-one years, and the females respectively the age of eighteen years; that at the same time a bill of sale was executed by *George Calvert* to *Caroline*, of the seven children, until they should respectively arrive, the males at the age of twenty-one, and the females at the age of eighteen years; that *George Calvert* is, by the will, made sole executor, and trustee in fee of all the property devised to the seven children, with a contingent devise in fee to *Caroline*, the mother, in the event of their being incapable of taking the benefit of the trust, from any cause whatsoever;

and that two codicils were afterwards executed, in the last of which *George Calvert* is made contingent devisee of the whole estate. All of which having gone to the jury, the appellant offered to give in evidence the declarations of this same *George Calvert*, (the reputed father of *Caroline*, and grand-father of the children, and who is described in the will as the confidential friend of the testator,) made a few days after the testator's death; "that he had promised him, (the testator,) to provide for the children, yet that he did not consider himself bound to do so, because he was convinced that they were not his children," which were rejected. Now, *Calvert* being executor and contingent devisee, and representing every interest under the will, and being also a defendant on record, evidence of any relevant declarations or admissions by him, adverse to the will, and bearing upon the issues or any of them, ought to have been admitted; the rule being, "that the admission of a party on record is always evidence, though he be but a trustee for another," with certain exceptions not applicable to this case. It does not fall within the principle excluding hearsay evidence; and with great deference we think, that his declarations offered to be proved are relevant, however trivial they may be considered standing alone. Seeing that he was the confidential friend of the deceased, who placed great reliance upon his judgment and fidelity, as manifested by the important trust confided to him, for it is a large estate, and the reputed grand-father of the children placed under his care, is it not clear that his promise, if made, had reference to the disposition of the will, and that they were conversing on that subject, at the time the promise was given? And may it not be, that this very old man, relying upon that promise, and the integrity and fidelity of his friend, was deceived into what he did, and would not have done, but for that deception, if, indeed, it had relation to the children intended to be provided for, for it does not clearly appear to which set of the children of *Caroline* it did relate; but suppose it related to the three children born after the will was

made, and not provided for, may it not be that the deceased wished and intended to make provision for them, but was prevented by the imposition and deception practiced upon him, if any such there was? and if so, if *Calvert* did make the imputed promise, intending to violate it, it was an imposition and deception practiced upon the old man. If the offer had been of evidence of an acknowledgment by *Calvert,* that he had forged the will, or extorted it by threats or violence, there would have been no difficulty about it. Here, indeed, the offer was of evidence of a circumstance only; but though a mere circumstance, it was of *one tending* to prove the issue of fraud, and which, when connected with others, might be found to be an important link in the chain.

As to the several other offers stated in the first bill of exceptions, we think they were all and each of them, evidence pertinent and proper to have gone to the jury, as parts of the surrounding circumstances of the transaction, and tending to elucidate the matter in dispute, and ought to have been admitted.

In questions of this kind, the condition and character and conduct of the persons drawn around the testator, are of importance to be inquired into, in reference to his family and relations, his own situation, the extent and nature of his estate, the character of the dispositions of the will, and to the persons to whom the property is given.

Here the condition of *Caroline Calvert* was that of a colored slave, the kept mistress of the testator, in which condition she continued until two days before the date of the will, with a view to which, the deed of emancipation would seem to have been executed, when *Thomas Cramphin* was eighty-five or eighty-six years old; the estate is a large one, and the whole of it given to her and her children named in the will, with a contingent devise to *George Calvert,* to the exclusion of all others. Now, seeing all this, if it be true that *Caroline Calvert* was, before she had formed the illicit connexion with *Cramphin,* and up to the time of that con-

nexion, a woman of lewd and dissolute habits, a common prostitute, which was offered to be proved; and if after that time continuing to live with him as his mistress to the day of his death, and inducing him to confide in her fidelity to him, she continued, unknown to him, to indulge in secret intrigues and lewd intercourse with other persons, which was also proposed to be proved, does it not throw a shade of suspicion over the will, and tend to shed light upon the subject in dispute? If she was a woman of such character and habits, and did so abuse his confidence, it was an imposition, a deception practiced upon that old man, calculated to induce a suspicion, that the entire disposition of his large property to her and to her children, was not the unbiased act of his mind. It may be a small circumstance, but in such a case, there is no circumstance having any bearing upon the question, that is too minute to be admitted.

It is apparent upon the face of the will, that the deceased, *Thomas Cramphin*, supposed the seven children of *Caroline Calvert*, therein provided for, were his—and if in fact they were not his, but the spurious issue of her secret and lewd amours with other persons, and he was by reason of old age, debility and infirmity, physically incapable of begetting a child, and she did falsely, artfully and deceitfully, and by her undue and overweening influence and dominion over his mind, impose them upon him as his children, and if *George Calvert*, believing them not to be his children, did aid and abet the false and deceitful imposition, (all of which was tendered to be proved) it was an imposition and deception practiced upon him, closely connected with, and strongly bearing upon the matter in controversy. Under the influence of that false impression alone, and by no independent motive of affection, he may have been induced to give his estate to *Caroline Calvert* and her seven children named in the will; which, but for such impression so made, he might not have done. In *Ex parte Wallop*, 4 *Bro. Cases*, 90, *and* 4 *Ves.* 809, where, upon application for a writ *de ventre inspiciendo*, it appeared that a woman who had lived

with a man named *Fellowes*, had made him believe that she had been brought to bed of several children, which he was weak enough to suppose were his, and gave legacies to them, as her children by him, *it was held that they were not* entitled. And *Clark and others vs. Fisher and others*, 1 *Paige's Rep.* 171, when the widow of the deceased procured from the alms-house a child, and imposed upon him as his niece, the child of a deceased brother, *to whom he* gave a part of his estate, the will was set aside. As to the admissibility of proof relative to the question of paternity, *vide* 4 *Term. Rep.* 350, *and* 6 *Term. Rep.* 330, *and* 2 *Stark. Ev.* 4 *part*, 219.

The cases in 1 *Ves. and Beam.* 422, and in 1 *Merivale's Rep.* 141, cited to show, that evidence in relation *to the* paternity of these children could not be received, do not apply *to this.* In those cases no question arose concerning the due execution and the validity of the will, which had been established; but they were merely questions of construction, and identity, and of the sufficiency of description of the persons claiming under the will.

As to the second bill of exception, the whole of the evidence that had been before rejected, was again offered, on the ground that all objection to it, if any existed, had been waived by the statements of the opening counsel on either side, which is again insisted upon here. We cannot assent to the proposition, that the statement by counsel of what they expect to prove, in opposition to the statement on the other side, is sufficient to lay a foundation for letting in testimony otherwise inadmissible. But this being the same evidence that we have endeavored to show, should before have been submitted to the jury; when offered again in an embodied and more imposing form, we think it ought not to have been rejected:

The instructions given by the court to the jury empannelled to try the issues, which form the subject of the third exception, remain to be considered. They are seven in number, and were given on the prayers of the counsel for

the defendants, most of them incorporating modifications prayed by the counsel on the part of the appellant. Of these are the first and second instructions, in both of which we concur.

The first as so modified, being a direction to the jury, that if any part or clause of the will was first suggested by any other person, and adopted by the testator, it was necessary that such suggestion and adoption should not have been the result of his incapacity or weakness of mind, nor of fraud, circumvention or undue influence, upon which, it was for them to decide from all the facts and circumstances in evidence. And the second being substantially and practically a direction to the jury, that to invalidate the will, on the ground of fraud or undue influence, it was necessary that it should have been induced by fraud, circumvention, deception, imposition, or undue influence operating upon, and controlling the testator at the time it was executed; of which, and in what degree he was influenced and controlled, it was for them to judge from all the facts and circumstances in evidence; and that it was not necessary that such fraud or undue influence should have been immediately and directly exerted at the particular time at which the will was made; and it is the only construction that can fairly be given to it.

The *third* and *seventh* instructions incorporating the modifications proposed on the part of the counsel for the appellant, would have been proper if they had stopped there. But the addition by the court to each of them, that *undue influence* implied *fraudulent practices*, was wrong; seeing that there may be overweening and controlling undue influence without fraud, as has been before remarked, and attempted to be shewn.

The *sixth* instruction, including the addition prayed by the counsel for the appellant, does not, as has been supposed, look to the immediate and direct resort to, and exertion of, fraudulent suggestions and undue influence at the time

the will was made, nor to the exercise of it in the procurement of that particular instrument, but to a general controlling undue influence and dominion, operating upon the testator at that time, and inducing *its* execution, which so far is right and proper.   But the same instruction limits the inquiry of the jury to the fraudulent suggestions, or undue influence of *George and Caroline Calvert*, or one of them, and of the other devisees, or some of them, and is applied to the whole of the first seven issues; whereas there are some to which it cannot relate.   And if the will was the result of the fraudulent suggestions or undue influence of others, the effect would, under the fourth and sixth issues, be the same.   It *is*, therefore, as so limited and applied, wrong.

We cannot concur in that part of the fourth instruction, in which evidence to prove or disprove the paternity of the seven children of *Caroline Calvert*, who are provided for in the will, is declared to be irrelevant to the issues, or any of them.  The question, whether they were or not the children of *Cramphin*, was not put in issue; but if they were not his children, it was under the nature and circumstances of the case, a fact relevant to, and tending to prove a matter that was put in issue, as we have before endeavored to show.

In the *fifth* instruction to the jury, that whether any of the devisees named in the papers purporting to be the last will and testament, and codicils thereto, of *Thomas Cramphin*, have or have not a legal capacity to take under said instruments, is wholly irrelevant to the issues or any of them; the court, we think erred, and should have given the fifth additional instruction prayed by the counsel on the part of the appellant.

It is true, that the construction of these instruments, and whether the children named are capable of taking under them, are questions not put in issue.   But the question, whether they were improperly procured to be executed is in issue.

*Caroline Calvert* is, by the original will, made contingent devisee of the whole estate; she has still living, three other children, born afterwards, who by codicil or another will might have been provided for—yet no provision was made in their favor, though they were as much entitled to his bounty as the seven who are named—and no reason is shown why they were not afterwards provided for, but left pennyless. If, after their birth, the will had been altered, and a part of the estate given to them, to that extent would her interest have been affected; for they were born free and capable of taking, being subsequent to her emancipation—whereas, in the event of the others being incompetent to take, the entire estate was by the will to go to her. She was interested, therefore, in both the *will* and their manumission being made as they were, and also in their being no subsequent alteration in favor of the three children born afterwards—which, looking to all the other surrounding circumstances of the transaction, is surely one having a bearing upon the question in controversy, and proper to be presented in argument to the jury, under the directions of the court. Besides, the same feeling that induced the testator to give such an estate to the children, born and living at the date of the will, if it was his own free and unbiased act, would, as it would seem, if left to himself, have prompted him to make some provision for those who were born afterwards.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.