## Thomas Corner, Baptist W. Corner, and Geo. W. Corner, vs. Edward H. Pendleton.

In an action to recover money lost at play by the plaintiffs' clerk from the party to whom it was lost, the plaintiffs proposed to produce a collection book kept by the clerk, and to show that he had not entered therein certain sums collected by him as it was his duty to do. HELD, that this evidence was wholly *irrelevant* to the issue in this case.

Where the right to recover depends upon several distinct propositions of fact, and the party fails in *either*, there is, in the language of the law, a *total failure* of evidence, and the court may so instruct the jury.

This total failure of evidence *also* occurs where the evidence is so slight and inconclusive, that no rational well constructed mind can infer from it the fact which it is offered to establish, and the jury would be left to draw deductions from wild speculation and conjecture.

Where the fact to be proved involves moral delinquency, the evidence should be so strong as to exclude the presumption of innocence, for innocence is presumed until guilt is proved.

Slight presumptions, although sufficient to excite suspicion or produce an impression in favor of the truth of the facts they indicate, do not, when taken singly, either amount to proof or shift the burthen of proof.

Where a number of such circumstances concur, they should be so strong as to satisfy the jury of the existence of the fact they are offered to establish; they must furnish more than the *probability* of the fact.

APPEAL from the Court of Common Pleas for Baltimore city.

*Assumpsit,* brought on the 3rd of November 1852, by the appellants against the appellees, to recover money lost at play at defendant's gaming-table by Rogers, their clerk, alleged to belong to the plaintiffs. The count in the *nar* relied on was for *money had and received.* Plea, *non assumpsit.*

*1st Exception.* The plaintiffs proved by Rogers, (to whose competency as a witness all objections were waived by the defendant,) that he played at faro at the defendant's gaming-table and lost there $400 between April and July 1851. They then proved that Drakely and Fenton, during the months of May and June, paid said clerk two checks upon the Western Bank of Baltimore, (which were paid by the bank,) for sums of money which it was his duty to collect for the plaintiffs. They then offered in evidence a collection book kept by said clerk,

43    v.8

and offered to follow it up by proof that it was his duty as such clerk to enter therein all sums of money collected by him, and that said sums so paid by Drakely and Fenton were not entered in said book; but to the admissibility of the same defendant objected, which objection the court (MARSHALL, J.) sustained, and the plaintiffs excepted.

*2nd Exception.* The plaintiffs then proved, that in July 1851 said clerk was under arrest, they charging him with having embezzled from them the sum of $2000, and that, induced by a desire to keep the matter a secret from their mother and family, his two brothers gave plaintiffs their four joint promissory notes for the $2000 thus claimed of said clerk, in sums of $500 each, payable at six, twelve, eighteen and twenty-four months from date. They then proved that said clerk was born and raised in the city of Baltimore, never having been out of the city for more than four years during all his life; that he possessed no means whatever, and that he had not one cent. They then offered various receipts showing that said clerk, in his duty as such, had collected various large sums of money from Drakely and Fenton on account of plaintiffs during the months of June and the early part of July 1851. Upon all the evidence the plaintiffs offered the following prayers:

1st. If the jury believe from the evidence that said clerk collected money for the plaintiffs in this case and lost the same, or a part thereof, in gaming, to the defendant, then they are entitled to recover of defendant so much as the jury may find he won of said money.

2nd. If the jury find that the promissory notes given to plaintiffs by the brothers of said clerk, were so given by them with the motive to conceal from their mother and family the fact of the alleged retention by said clerk of the money of the plaintiffs, then such motive constitutes no valid legal consideration of itself to render them responsible upon said notes, and that their mere existence in the hands of the plaintiffs creates no obstacle to the plaintiffs' recovery in this case.

3rd. That there is no evidence in this cause of any valid legal consideration moving from the plaintiffs, or any other person, to the drawers of said notes for the same.

4th. If the jury find the facts set forth in the first prayer, then the giving of said notes and the acceptance of them by the plaintiffs do not of themselves in law operate as a payment of the sum claimed in this action, nor as satisfaction for the same, nor as an accord and satisfaction for the demand set forth in the declaration, nor as a waiver or extinguishment thereof, nor as purging the tort as arising out of the gaming set forth in the first prayer upon which the implied *assumpsit* in this case is founded.

The court rejected each of these prayers, and to this ruling the plaintiffs excepted.

*3rd Exception.* The defendant upon all the evidence asked the following instructions:

1st. That the plaintiffs are not entitled to recover, because there is no evidence that defendant was at any time in possession of the plaintiffs' money, for the recovery of which this action is brought.

2nd. That if the jury find from the evidence that plaintiffs took the notes of the brothers of said clerk in satisfaction, if paid at maturity, for the sum or sums claimed or alleged to have been embezzled by said clerk, then the plaintiffs are not entitled to recover.

These prayers the court granted, and to this ruling the plaintiffs excepted, and the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Grafton L. Dulany* for the appellants.

1st. It is very clear, that if the money lost by the clerk of the plaintiffs to the defendant was not his, but theirs, they can recover in this action. The proposition may be assumed, that whenever the property of one man comes to the hands of another, unless he be a *bona fide* purchaser for a valuable consideration without notice, the title of the original owner still continues, and he may sustain an action to recover it from the possessor. 3 *How.*, 402, *Oliver, et al., vs. Piatt.* 1 *Maule*

& Selw., 714, Randoll vs. Bell.  15 Ves., 440, Lupton vs. White.  14 Penn. State Rep., 295, McCullough vs. McCullough.  12 Clark & Finnelly, 764, Murray vs. Pinkett.

2nd. The notes given to the plaintiffs did not extinguish or satisfy the demand in this case.  There is not a single fact in the case which shows that they were given or intended for the benefit of the defendant.  The evidence is expressly and positively the other way, the consideration being to pass concealed the entire transaction, from motives of affection to a parent. With the gamester, Pendleton, the drawers of the notes had no dealings, nor even an acquaintance, nor any imaginable inducement to pay him the money which he held of others. The creditor may go against the original debtor, notwithstanding the notes; nothing but *payment* will satisfy the *debt*.  5 *H. & J.*, 425, Merryman vs. The State.  6 *Do.*, 256, McIlhenny vs. Jones.  1 *H. & J.*, 48, Pearce vs. Wallace.  2 *G. & J.*. 344, Williamson vs. Allen.  11 *Do.*, 287, Sangston vs. Maitland, et al.

3rd. There was evidence to go to the jury, that the money lost by Rogers to defendant belonged to the plaintiffs.  I do not believe that it is possible for any impartial mind, attentively considering the circumstances disclosed by the record, to arrive at any other conclusion than that the money lost was the property of the plaintiffs.  It was proved that the clerk of the plaintiffs, between the months of March and July 1851, lost $400 to the defendant at his gaming-table.  It was proved, that whilst he was in their employment he had taken of their money $2000, which he did not return to them.  There is positive proof, that at this time he had no means—not one cent; that is, of his own money.  The inference is irresistible, that the money which he lost to Pendleton was part of the money which he had withheld from the Corners.  There is no proof that he had money belonging to any one else, or that he borrowed money upon his credit, or had received wages as a clerk, or that he was entrusted with their money by others than the Corners.  The question then is, whether the facts in the cause in favor of the plaintiffs, taken by themselves and uncontradicted, constitute evidence sufficient to go to the jury

Corner *vs.* Pendleton.

as tending to prove the issue on the plaintiffs' side? The solution of this question does not depend upon any legal principles, but upon the nature and character of the facts virtually proved, whether in themselves they directly support the issue on behalf of the plaintiffs, or carry along with them the probable existence of another or other facts not expressly proved which do support the issue. In either case the evidence would not only be admissible, but sufficient; for in all civil cases, according to elementary principles, the verdict is given on that side upon which the weight of *probability* inclines the scales. The jury are not required to find the existence of any facts, but merely their *probable* existence.

The cases cited on the other side, decided by the Court of Appeals, are not any of them analogous in their circumstances, in regard to the question I am now considering, to those of the present case, and establish nothing more than the general principle, which is not denied, that it is for the court to pronounce, in the first instance, upon the "sufficiency of the evidence" to be submitted to the jury; but as furnishing a test whether the evidence in this particular case is sufficient, they vary so much, each of them in their circumstances, from the special facts proved in this cause, that they are quite inapplicable and useless. The case of the *Mechanics Bank vs: Cook*, tried in Baltimore county court, before Chief Justice Le Grand and Judge Purviance, appears to me to be a case directly in point, upon the question mooted here. The facts of the case, as well as I can recollect them, were strictly these:

It was proved that Turner, one of the clerks of the bank, had, in the course of a series of years, embezzled a very large sum of money from his employers, and being charged with his offence, or conscious of the suspicions existing against him, had fled the city; proof was also adduced of peculation on his part some two or three weeks before his flight. Cook, the defendant in the action, was a police officer, who was sent in pursuit of Turner, whom he found, some six weeks or two months after he had left Baltimore, in Canada, having on his person a roll of British guineas, amounting to $284.84.

This sum was taken by Cook, brought to Baltimore and

placed on special deposit in the Mechanics Bank, Cook being warned by Turner that he claimed the money as his own, and that he should not pay it over to the bank. An action of assumpsit was then brought by the bank against Cook for the recovery of the money he had taken from Turner, on the ground that in fact it was the bank's property. At the trial of the cause, in addition to the facts proved as stated above, testimony was adduced to the effect, that Turner had no means of his own; which was attempted to be rebutted by evidence that he had. There was no *direct* proof that the roll of guineas found on the person of Turner was the property of the bank; they were not identified by positive evidence.

On this state of facts the bank asked the court's direction to the jury, that if they found from the evidence, either that the money taken by Cook from Turner was by him embezzled from the bank or was the proceeds of that which had been so embezzled by him, then the bank was entitled to recover; this direction was granted by the court, and the jury gave a verdict in favor of the plaintiffs for $284.84.

But before the court's decision on the plaintiffs' prayer was given, the defendant's counsel, as well as I recollect, the late Attorney General, Mr. Richardson, objected, that there was no sufficient evidence to go to the jury of the plaintiffs' title to the funds they sought to recover—that the money was not identified as the plaintiffs' property. This objection was earnestly argued on both sides, and the court, overruling the objection, decided that there was *prima facie* evidence sufficient to go to the jury for their consideration in relation to the purpose for which it was offered. The verdict being for the plaintiffs, a motion for a new trial was made and argued before a full court, when the motion was overruled. This case appears to me to be strongly in point.

*R. T. Merrick* and *Robert J. Brent* for the appellee.

1st. As to the *first exception:* It is difficult to perceive what the duty of Rogers, as clerk of the plaintiffs, had to do with the liability of the defendant in this case. There is no attempt to identify the money collected by Rogers, and not

entered in the book referred to, with any money the defendant
ever had.    And even if there was, the book kept by Rogers
would not be competent evidence to aid in establishing that
identity in this case.    It is nothing but his declaration.    In
an action against him it would be admissible, but in action
against a third party he is, himself, a competent witness, and
had actually been sworn in this cause.

2nd.  The taking of a note for a precedent debt, if taken
with *the understanding that it is in full discharge of that debt,*
is an extinguishment of that debt, whether the note be paid at
maturity or not.    And the fact of taking a note for a precedent
debt is, *in law,* a suspension of the right of action on the debt
until the maturity of the note.   1 *Parsons on Cont.,* 365,
368, 369.   2 *Do.,* 197, 198.   16 *Penn. State Rep.,* 450,
*Stone vs. Miller.*   1 *Barn. & Adol.,* 603, *Smith vs. Alger.*
1 *Md. Rep.,* 110, *Mudd vs. Harper.*   2 *G. & J.,* 493, *Glenn vs.
Smith.*

3rd.  There is no evidence whatever, in the record, that
Rogers ever appropriated to himself, or to any purpose, other
than proper and legitimate purposes, any money of the plain-
tiffs that came into his possession.    The only attempt made
to establish the fact that he had been guilty of the charge they
made against him, was in the offer of the book in which they
allege it was his duty to have made an entry of certain moneys
received by him on their account, and in which book they
allege the entries did not appear.    From this fact they intend-
ed to draw the inference that he had appropriated that money.
The court very properly rejected this evidence.    It was the
declaration of a third party, and if proved by a competent wit-
ness, was a fact, from which no rational mind could draw the
conclusion, that a clerk who had thus simply failed in a
manual duty of his office, had therefore been guilty of so grave
and serious an offence as that sought to be established by it.
It was not an attempt to prove a false or fraudulent entry, but
simply a failure to make an entry, which was a circumstance
perfectly consistent with a more charitable hypothesis than
criminal guilt.    But if it were in proof that he had embezzled
the money of the plaintiffs, where is the proof that this defend-

ever received it? The only proof relative to this defendant's intercourse with Rogers is, that he won from Rogers some $400. But there was no attempt to identify this money, and privity between the plaintiffs and this defendant was not pretended. The plaintiffs were pursuing a fund, which, in order to recover from this defendant, it was necessary they should identify—should establish by evidence to be the particular money to which they had title. There is no such evidence in the record. The most unfavorable view of this case for the defendant, when presented by the plaintiffs on their behalf, is: Rogers was the plaintiffs' clerk; Rogers had the plaintiffs' money; Rogers lost $400 to defendant; Rogers had no money of his own, and therefore the money Rogers lost was the plaintiffs' money, and they are entitled to recover it in an action for money had and received to their use. This certainly institutes a new mode by which an indebtment is to be established in the State of Maryland. But Rogers had more than $400 of the plaintiffs' money. They allege he appropriated $2000. Where is the rest? Pendleton didn't get all of it: what became of the rest?

The case of *Jones vs. Mechanics Bank*, 8 *Gill*, 123, is one similar to the present, but with much stronger proof against the defendant than in the present case, and yet the Court of Appeals did not hesitate to say that the evidence was not sufficient to support the action. Where the deduction sought to be drawn would be merely from wild speculation and conjecture, or where the evidence is so slight and inconclusive that no rational, well constructed mind could make therefrom the inference sought to be deduced, in all such cases the court may, and will instruct the jury, that there is no evidence, or no sufficient evidence, in point of law, to establish the fact sought to be proved. 7 *G. & J.*, 95, *Farmers Bank vs. Duvall*. 4 *Md. Rep.*, 283, *Thurston vs. Lloyd*. 9 *Gill*, 331, *Clarke vs. Marriott*.

TUCK, J., delivered the opinion of this court.

We are of opinion that the point made by the first exception, as to the admissibleness of the collection book offered by the

plaintiffs, was properly ruled against them. The failure on the part of their clerk to enter collections in the book was wholly irrelevant to the issue in the cause, which was whether Rogers had lost the plaintiffs' money at play with the defendant. The offer concedes the necessity of proving that he had collected money of the plaintiffs' before the book could be used. Of what avail then the omission to enter the sums collected could be after its receipt by the clerk had been proved, we are at a loss to conjecture. But suppose it had appeared by the book that these sums were entered, would that have affected the plaintiffs' case? Certainly not. He might still have recovered if he had traced the money to the defendant's possession. In either aspect, the effect of producing the book would be the same, and not tending to prove the issue it was well rejected.

The second exception embraces four prayers offered by the plaintiffs, all of which were rejected. The reason assigned here for the refusal of the first of these prayers is, that there was no evidence legally sufficient to warrant the jury in finding, that Rogers lost the plaintiffs' money with the defendant. If this proposition be maintained, the defendant's *first* prayer in the third exception was properly granted.

In many cases it is very difficult to define the line which separates the province of the jury, in deciding facts, from the power of the court to withdraw the case from their consideration altogether, on the assumption, that the evidence, if believed by the jury, is not legally sufficient to prove the issue sought to be established. If the right to recover depends on several distinct propositions of fact and the party fails in either, it is a case of total failure, in the language of the law; and this may occur, not only where there is no evidence whatever as to one or more of the propositions, but where it is so slight and inconclusive that no rational, well constructed mind, can infer from it the fact which it is offered to establish, ( *Cole vs. Hebb,* 7 *G. & J.,* 20,) and the jury would be left to draw deductions from wild speculation and conjecture. *Ibid.,* 95, *Farmers Bank vs. Duvall.* Considering that juries are designed for the trial of issues of fact, it would perhaps have been safer if courts had

44    v. 8

contented themselves with interfering only in those cases where there was an absolute want of evidence as to all or any one of the propositions necessary to be proved, leaving to the jurors the right to decide in all cases where any evidence was offered tending to prove the matters in dispute. The court's control over verdicts by the power to grant new trials, would, we think, be. a sufficient security against abuse of authority by the jurors. But as we find this to be the established law in this State and elsewhere, substituting in such instances the judgment of the court for that of the jury, it is our duty to apply it in the present case, unless the record shows that the evidence offered leads to the conclusion, as matter of fact, that the money collected by Rogers passed to the possession of Pendleton, at his gaming-table.

That Rogers collected money for the plaintiffs during the time that he was in the habit of visiting the defendant's rooms there can be no doubt, but that this money was lost there is not apparant. If it had been proved that during this period of time Rogers had no other money from any source, the inference would be reasonable, that this money only could have been gambled by him. But the evidence does not go to that extent. It shows that "he possessed no means whatever and that he had not one cent," without defining the time to which this statement of his condition was intended to apply. The inference is not reasonable that the witness was speaking of the whole lifetime of this young man. He was employed in the commercial house of these plaintiffs, discharging, among others, the responsible duty of collecting large sums of money. We cannot presume that he was doing this for nothing, or that he had no credit by which he could obtain money. The case goes upon the ground that the clerk embezzled from his employers; and a verdict for the plaintiffs could have been rendered on no other hypothesis. This it was sought to establish by inferring, that contrary to his duty, the sums collected had not been accounted for, and superadded to this, by another inference, that because he had, during these periods, played at faro with the defendant, therefore he lost this money and none other. The identity of the money lost with the funds

collected was the fact to be proved. Depending upon circumstantial evidence, and involving moral delinquency, not to say criminal offence, by the clerk, we think the inference should be so strong as to exclude the presumption that he obtained the money elsewhere. "Slight presumptions, although sufficient to excite suspicion or produce an impression in favor of the truth of the facts they indicate, do not, when taken singly, either amount to proof, or shift the burden of proof." *Best on Presumptions*, 41. 47 *Law Lib.*, 45. And where a number concur, they should be so strong as to satisfy the jury of the existence of the fact they are offered to establish. 5 *G. & J.*, 304. They must furnish more than a probability of the fact. Moreover, this is a case of conflicting presumptions, where the inference claimed by the plaintiffs, that the money lost by Rogers belonged to them, is met by the principle, that innocence is presumed until guilt is proved. In *Rex vs. Inhabitants of Twyning*, 2 *Barn. & Ald.*, 386, a point of legitimacy arose, depending on the question, whether the mother, whose first husband had left the county twelve months before, was a widow when she married the father of the children, and it was held that the second marriage should be presumed to be valid. The court said, "this is a case of conflicting presumptions, and the question is, which is to prevail? The law presumes the continuance of life for seven years; but it also presumes against the commission of crime, and that even in civil cases, until the contrary be proved. If the female had been indicted for bigamy, the evidence would clearly not be sufficient." *Best on Presumptions*, 59. 47 *Law Lib.*, 54. We suppose that if Rogers had been tried for embezzling these funds, no conviction could have been had on these inferences, when set up against the presumption that he had paid over the money collected, as it was his duty to have done.

Cases of this kind sometimes depend on the authority of decisions on similar facts. And in this view, we think the ruling of the court is sustained by the case of *Jones vs. Mechanics Bank*, 8 *Gill*, 123, where the circumstances were very strong to show that Perry had improperly obtained the plaintiff's money and deposited that very money in the bank. But the

court held that there was a failure of evidence on this point. In some respects the inference was sustained by facts, about which there could be no dispute, stronger than those presented by the record before us, but the identity of the bank notes drawn by Jones with those deposited by Perry, was not made out by testimony legally sufficient for that purpose.

The case of *Mechanics Bank vs. Cook,* referred to in the argument of the appellants' counsel, if in conflict with *Jones vs. The Mechanics Bank,* 8 *Gill,* 123, must yield to its authority, as the judgment of the court of last resort.

As this view of the case shows the plaintiffs had no standing in court, the other prayers, based upon the matters offered in defence, need not be considered and passed upon by us.

*Judgment affirmed.*