ELLA V. BEALL ET AL. *vs.* FRANK & ADLER.

*Bill by Married Woman to Enjoin Seizure of Her Property Under Execution Against Her Husband—Sufficiency of Evidence to Establish Ownership by the Wife.*

A judgment creditor of a husband issued an execution and seized under it certain merchandise in a shop where the judgment debtor's wife and another woman were carrying on a business, the creditor claiming that the property had been purchased with money belonging to the husband. Upon a bill to enjoin execution of the judgment. *Held,* that the evidence establishes that the property had been purchased with money earned by the wife, and that it is not liable for her husband's debts.

Appeal from a decree of the Circuit Court for Prince George's County (MERRICK J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*C. C. Magruder* and *M. Hampton Magruder*, for the appellants.

*Marion Duckett* and *Elbert Dent*, for the appellees.

JONES, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Prince George's County dissolving an injunction and dismissing the bill which had been filed in that Court by the appellants to restrain the appellees and the sheriff of the county from proceeding with the execution of a judgment against certain property claimed by the appellants ; and upon which bill a preliminary injunction had been granted. The bill alleged that the appellants were carrying on a mercantile business at Glenndale, in Prince George's County, as a firm, trading as Beall & Mahan ; that in the spring of 1899, "the plaintiff, Ella V. Beall, engaged in a retail dry goods and grocery store on her own

account and enjoyed good credit with a fair and increasing share of success up to about the 9th day of November, 1899, when she entered into articles of partnership with the other plaintiff, Florence G. Mahan, who became a one-half partner in said mercantile business;" that they were interrupted in the said business by a levy on their whole stock of merchandise by the Sheriff of Prince George's County, "who seized and took possession thereof by virtue of a writ of *fieri facias* which had been issued from the Circuit Court for" said county on a judgment recovered by the appellees, Frank & Adler, against Frank Beall at the January Term, 1896, for the sum of $843.78, interest and costs—the sheriff taking said stock as the property of Frank Beall, the defendant in the judgment; that said Frank Beall did not have any interest whatever, directly or indirectly in the property so seized and levied upon or any part thereof; that the said sheriff threatened to advertise and sell said stock of goods; that the said Ella V. Beall carried on the said business from the spring of 1899 with capital which was her own individual money; that she took out license as required by law; that the other plaintiff also invested her own money as capital; that "their respective husbands had not one cent invested in the business;" and that "said stock of goods so seized by the sheriff belongs exclusively to the plaintiffs and is not in any way liable for the debts of the said Frank Beall." The bill then prays for an injunction against the defendants below, the appellees here.

The appellees, Frank & Adler, answered the bill. In their answer they aver they know nothing of the partnership alleged in the bill. They admit having the judgment against Frank Beall and that they ordered a *fieri facias* to be issued thereon which commanded the sheriff "to levy upon the lands and tenements, goods and chattels" of said Beall. They further aver that they know nothing of the plaintiff, Ella V. Beall being engaged in "mercantile business as alleged" in the bill; that Frank Beall has been in mercantile business for a number of years in Prince George's County; that he was so engaged when he contracted the debt with the respondents for

which the execution referred to in the bill was issued and levied; that he "has had active charge and general management of the store at Glendale from the spring of 1899 to the date of said levy keeping himself in and about said store, selling goods therein, and receiving payment thereof, and if he was acting as agent of Ella V. Beall or Beall & Mahan" strict proof thereof is required; that said Frank Beall "professed to have failed in business when merchandising" in said county and made a deed of trust or assignment for the benefit of creditors; that the trustee named accepted the trust and docketed a case in the Circuit Court in which a large number of claims were filed against the said Beall but not including the claim of the respondents; that there was no inventory, nor lists of assets, accounts of sales nor reports made by the trustee because the assignment carried nothing of any consequence and nothing worth the effort of the trustee to possess himself of; "that the said Frank Beall kept to himself his position as merchant and has since" merchandised in said county "and has supplied the plaintiff Ella V. Beall with the money which started her in business at Glendale;" that "if the operations at said store have been carried on in her name to the time of the formation of her partnership with Florence G. Mahan" she purchased goods with money and property furnished her by the said Frank Beall and "the same has been carried in her name for the purpose of enabling the said Frank Beall to defraud his creditors and place said property or a. large part thereof in this and other ways beyond the reach of his creditors; that "a large part of the property, if not all, in said store at the time of the alleged levy by the sheriff, was in law the property of the said Frank Beall or if the property of the said Ella V. Beall that she acquired the same by gifts from her husband or through money and property furnished her at sundry times by him;" and that if the plaintiff "Florence G. Mahan had any interest in said property at the time of said levy" strict proof thereof is required. The respondents then "pray that the Court may return jurisdiction in the premises to ascertain whether the said Ella V. Beall or the said Flor-

ence G. Mahan or both owned the property so levied upon and whether or not the said Ella V. Beall's interest therein, if any, was not acquired by gift from her husband or through money or property furnished her by him, between the date of the contracting of the debt of the said Beall to these defendants and the date of said levy."

The sheriff answered admitting the levy, asking strict proof of the title of the plaintiffs, describing what was done under the levy and praying that, as the defendants, Frank & Adler, assert in their answer that title to the goods levied upon is in Frank Beall, that the "parties may prosecute their interpleading to a final hearing." It is thus seen that all parties invoke the jurisdiction of the Court to have determined the issues that are presented by the pleadings.

The decision of these issues depends upon the evidence which has been adduced by the parties in support of their respective contentions. From a careful consideration of this evidence we have been led to a different conclusion from the one which was reached in the case by the learned Court that decided the case below. The basis of the contention upon the part of the plaintiffs is that the property in controversy was acquired by them by their own labor, skill and industry in the prosecution of a business upon their own account and independently of their husbands. In examining this contention it will only be necessary in the view we take of the case to have reference to the evidence affecting the relation of Mrs. Ella V. Beall to the property in question.

In a contest of this character between a wife and the husband's creditors there is a presumption against the claim of the wife "which she must overcome by affirmative proof." *Seitz* v. *Mitchell*, 94 U. S. 580–3; *Manning* v. *Carruthers*, 83 Md. 1. This results from the common law relation between husband and wife as to the property of the latter, and is indicated in the authorities just referred to, and those therein cited, as a wise policy of the law ; and to be adhered to, notwithstanding the modification of this common law relation by statutory provisions securing to the wife property possessed by her at the

time of marriage or acquired by her during coverture from sources independent of herself or earned by her through her own efforts in the prosecution of a business. This presumption operates to cast upon the wife the burden of proof in asserting a claim to property as against the creditors of the husband ; and it may be further conceded that in most cases in which such a claim is brought into litigation it comes into Court clouded with more or less suspicion. While this is so, giving effect to this presumption does not mean that due credit is not to be given to evidence on the part of the wife in support of her claim. Such evidence, especially when given by the parties most interested, ought to be accepted with caution and only after " close scrutiny ;" but when it is delivered by witnesses whose credibility is not impeached and whose testimony is not contradicted it is not to be rejected except for such intrinsic infirmity or improbability, when compared with known or established facts, as will show that it is not entitled to credit. The law does not permit the wife to acquire property from the husband in prejudice of the rights of subsisting creditors. Still less will it tolerate the attempted withdrawal of property, which in reality is that of the husband, from the reach of his creditors by investing the wife with the ostensible ownership of it.

Where, however, the wife has become possessed of property in her own right acquired by her independently of her husband by virtue of, or in the exercise of rights under any of the provisions of our statute law it is her constitutional right to have such property protected from the debts of her husband. Art. 3, sec. 43 of the Constitution; *Baker* v. *Hedrick*, 85 Md. 645. In a contest, therefore, between her and her husband's creditors she is entitled to have her claim fairly considered, and to have her evidence tested by recognized rules for weighing evidence. In the case of *Seitz* v. *Mitchell, supra,* no evidence was adduced on the part of the wife at all. She rested entirely upon her answer under oath. There real estate had been purchased and the conveyances were made to the wife. A judgment creditor was seeking to have this real estate subjected to the lien of judgments obtained by him against the husband.

The answer of the wife denied that the husband bought and paid for the lots of land involved in the suit; and averred that the wife had bought and paid for them in her own right and for her separate property and had taken the deed in her own name. The Court said that the answer furnished no evidence that the wife had any separate estate; that it did not aver that the wife paid for either of the lots of real estate conveyed to her out of her separate estate; that it did not aver that she had any separate property, nor did the proofs show that she had any; and that it averred that the wife paid the purchase money with means and money earned and procured wholly by herself; but of this there was no proof, nor attempt to adduce proof. In this state of case the Court held the presumption against the wife had not been overcome. In the case of *Manning* v. *Carruthers*, 83 Md. *supra*, the proof appears to have all accorded with the presumption which was to be overcome.

The conditions presented by the case at bar differ essentially from those of the cases just referred to. Here practically all of the proof in the case has been produced by the plaintiffs, the married women, who claim the property that is the subject of controversy; and all of it is directed to overcoming the presumption that this property represents means furnished by their husbands or is the property of their husbands. The question is must it all be disregarded and rejected as unworthy of credit? That it must be is the proposition that is maintained by the appellees. The evidence shows that the plaintiff, Ella V. Beall, and Frank Beall, the judgment debtor against whom was issued the execution which the proceedings in this case were instituted to restrain, were married in 1890. The wife seems to have been possessed of no property at the time of the marriage; and if the husband was possessed of any it was very insignificant in amount and value. The latter shortly after the marriage engaged in mercantile business in Prince George's County in which he was unsuccessful. He conducted the business but a short time when he failed and made an assignment for the benefit of his creditors.

There appeared a large disproportion between the liabilities of
the assignor and the assets which became available under the
deed of assignment for their discharge ; and the appellees pro-
duced the trustee under the deed as a witness to prove that
the assignor, Frank Beall, had not fairly and *bona fide* turned
over to his assignee all of his property which consisted of his
stock in trade, book accounts, certain evidences of debt and a
one-half interest in a tobacco crop.   The trustee testified that
he possessed himself of and realized on the tobacco crop ;
that he found the book accounts and other evidences of debt
without value and uncollectible ; and that he found no prop-
erty—everything having been sold ; so that the best he could
do was to collect the moneys owing on it.   Frank Beall and
his wife accounted in their testimony for the condition of
affairs disclosed by the former's failure in business by their
evidence to the effect that Beall was prevented from giving
attention to his business for seven or eight months by a seri-
ous and protracted illness following a spell of typhoid fever,
during which time the business had to be entrusted to clerks
whose management thereof and conduct in connection there-
with involved him in hopeless insolvency; which together with
continued ill health made necessary the abandonment of all
effort on his part to carry on longer the business in which he
had been engaged and which he had theretofore prosecuted
with such success as to meet all obligations incurred.   He
then made the assignment for the benefit of his creditors which,
he said, was all that he saw he could do.   He further testi-
fied that he made the assigment in good faith; that he turned
over everything he had to his trustee for the benefit of his
creditors; that he did nothing in any way to defraud his credi-
tors ; that he gave his wife no money to start business; that
he, himself, engaged in no other business, but early in 1894
he got a position under the government in the United States
Post Office in Washington; that when he received the appoint-
ment to this position he did not have money enough to buy
his railroad ticket to Washington and had to borrow the money
for that purpose from a Mr. Erven Dickens whom he offered

to produce and said he could produce in ten minutes to con-
firm what he said as to this.

The only witness produced at all by the appellees was the
trustee under the deed of trust made by Frank Beall to whose
testimony reference has been made.   In rebuttal of the testi-
mony of this witness the appellants produced as a witness
Samuel B. Chaney, who was the party referred to in the testi-
mony of the trustee as having purchased the stock of goods
and business of Frank Beall.   Chaney testified that when he
so purchased, it was with the understanding "that what the
stock amounted to was to be paid to" Beall's "creditors or
their representatives;" that he began taking the stock so pur-
chased on the first of January, 1893, and the trustee came to
the place of business where this stock was on the 7th of that
month.   He then gave a particular account of what disposi-
tion had been made of the stock in question and showed that
the trustee and certain named creditors had received what was
realized therefrom, concluding his testimony with the empha-
tic declaration that he paid to Beall "not a cent."   If the testi-
mony of the plaintiffs which has been so far referred to, be
true the fact is established that Frank Beall's failure in busi-
ness left him without the means to give or advance to his wife
money or property for the purpose of starting business.   After
the failure in business of Frank Beall he obtained in the early
part of 1894 the government position in Washington to which
reference has already been made.   In the course of the pro-
ceedings below this position was referred to as a lucrative one.
This is not based upon the evidence.   It nowhere appears in
the testimony what the salary was which was attached to the
office he held.   If the appellees had reason to believe the pos-
ition a lucrative one, it is singular that in the course of a
lengthy cross-examination of Beall they should have omitted
to elicit from him what his salary actually was.   His examin-
ation in chief was decidedly suggestive of such a question if
there was reason to expect a favorable answer.   He testified
that after getting the position in question he gave his wife no
money; that his family consisted of his wife and four children;

that he supported his mother in part; that there was practically nothing left of his salary after supporting his family; that some months there was nothing left; and some months it took more than his salary to carry his family expenses. If this evidence be true the fact can well be as he states it, that, at the time his wife opened the store in which the business was conducted that she complains was interrupted by this suit, neither of them had any money beyond an amount, less than $100, which his wife had in the house.

So much for the means which the evidence, assuming it to be true, shows was at the command of the husband to be furnished to the wife for starting and carrying on business as the appellees claim that he did. Now we will look at the testimony as to how she acquired the means of starting and carrying on business. The testimony of Mr. and Mrs. Beall, as to this, is to the effect that after the failure in business of the husband the wife, Mrs. Beall, rented a farm in her own name which she carried on while her husband was occupied with his duties in Washington—he rendering only such slight services about the place as he found time for and volunteered to do in the little time that he could spend with his family in going to and coming from Washington, where he was employed. In 1897 Mrs. Beall purchased in her own name a farm in Prince George's County upon which she paid seven hundred dollars as a cash payment and gave a mortgage of five hundred dollars for the balance of the purchase-money. She testified that she purchased the farm with her own means ; that the seven hundred dollars was made up of four hundred and sixty dollars that she had in bank and of notes which she held against two of her husband's brothers to whom she had loaned money. One of these notes being for $155 and the other for $45— and a note for $40 due from a Mr. Slingluff. She accounted for how she became possessed of this money by saying that she accumulated it in every way that one could on a little farm. She sold fruit—had sold as much as $100 worth in one year—raised poultry; did sewing; and there was evidence confirming her testimony as to having sold crops of tobacco

through the Maryland Grange Agency. Forty dollars of the $460 which she had in bank were the proceeds of sale of a horse given to her by her father. She further testifies that she was induced to make this exertion for herself and on her own account because her husband's health had been bad ever since his illness which has been heretofore referred to ; and that shortly after the fever which preceded his long illness the doctor did not encourage her but told her he might never recover his health.

It has been argued that this testimony is to be discredited because the parties from whom the notes spoken of therein and the party who received them were not produced in corroboration. The force of this is not perceived. Mrs. Beall testified with apparent candor specifying particularly amounts and giving names of the parties concerned in the transactions and thus made it easy for the appellees to contradict her if she spoke contrary to the fact. If they believed the facts were not as they were stated by her to be, instead of asking the Court to assume that she swore falsely, because she did not produce all the evidence that she might have produced, they should have made the effort to contradict her by means that her testimony made obvious. They did not call the witnesses whose names she furnished nor explain why they did not call them. This is the crucial point in the case of the appellants. If the testimony here being considered is to be taken as true and if Mrs. Beall actually and in a *bona fide* manner accumulated the moneys in question through the means which her testimony indicates, then it readily appears how she was enabled to start the business which she was conducting as she claims, at the time of the levy made by the appellees which was the cause of this suit. In the case of *Baker* v. *Hedrick*, 85 Md., *supra*, it was held by this Court that money acquired by a married woman through means similar to those appearing in the testimony of Mrs. Beall and while working on her own account upon property owned by the husband was her separate property. Having testified how the moneys just referred to were acquired and invested, Beall and his wife further stated

that in the spring (March) of 1899, Beall was fearful of losing his position and that he told his wife she had better "look out for herself." In order to start the business in question $100 was borrowed on tobacco crop of the wife and $200 additional was raised by releasing the $500 mortgage on the farm purchased by Mrs. Beall and getting a loan of $700 on mortgage on the farm. The money thus raised enabled the wife to start business. Subsequently she sold the farm which she had purchased subject to the mortgage for $700 which she had placed upon it—the purchase price being $1,500 including the mortgage—and she received of the difference between this price and the mortgage $500 in cash and the balance in notes which she held at the time this suit was brought. Whether any of this last-mentioned money was put into the business in question by the wife does not appear, but the stock she had on hand at the time the appellees made the levy of which the appellants complain, amounted in value to between $900 and $1,000; and the wife testified that her husband had neither money nor property there—that it was all hers.

With the exception of the one witness produced on the part of the appellees whose testimony has been referred to, and which testimony was effectually contradicted and explained by a disinterested witness on the part of the appellants having a better knowledge of the facts, all of the testimony which has been reviewed was affirmative evidence offered by the appellants. The appellees have not contradicted it by opposing evidence and have not attacked the credibility of the witnesses who delivered it; but have relied exclusively with the exception just mentioned upon the presumption which the wife, in cases of this character, is required to meet and overcome by affirmative proof. The evidence on the part of the appellants if true establishes the contention they set up. We do not find it so incredible or in itself so intrinsically improbable that in the absence of contradiction it can be wholly rejected and discredited. In the case of *Corner* v. *Pendleton*, 8 Md. 337, it was said that proof of a fact involving moral delinquency should be so strong as to exclude the presumption of inno-

cence.    In  this  case,  if  in  the  face  of  the  evidence  of  the  ap-
pellants  we  should  determine  that  the  contention  of  the  appel-
lees  is  established, it  would  be  equivalent  to  declaring that the
appellants  had  concocted  and  planned  a  scheme  of  fraud  and
had  endeavored  to  support  it  by  deliberate  and  intentional
falsehood  and  perjury.    We  do  not  think  the  circumstances
of  the  case  will  justify  such  a  conclusion.    In  dealing  with
the  evidence  in  the  case,  that  only  has  been  treated  of  which
related  to  the  relations  of  the  plaintiff,  Mrs.  Ella  V.  Beall,
and  her  husband,  Frank  Beall,  to  the  controversy.    As  those
of  the  other  plaintiff,  Mrs.  Mahan,  are  wholly  dependent  upon
the  conclusion  reached  in  regard  to  the  rights  of  her co-plain-
tiff,  Mrs.  Beall,  it  has  not  been  necessary  to  make  reference to
evidence  relating  to  Mrs.  Mahan  and  her  husband  in  connec-
tion  with  the  property  here  in  question.

Upon  the  conclusions  which  we  have  reached  in  the  case
the  decree  of  the  Circuit  Court  for  Prince  George's  County,
which  dissolved  the  injunction  and  dismissed  the  bill  of  the
appellants,  must  be  reversed  and  the  case  remanded,  that  a
decree  may  be  passed  in  conformity  to  the  views  herein  ex-
pressed,  making  the  injunction  perpetual.

> *Decree reversed with costs to the appel-*
> *lants and cause remanded.*

(Decided April 17th, 1901.)